IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **JOHN LYNCH and DAXTON HARTSFIELD, individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**TESLA, INC.**<br><br>*Defendant.* | **No. 1:22-cv-00597-RP** |

<u>**PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER**</u>

## I.      INTRODUCTION

This case is brought on behalf of individuals who have worked for Defendant Tesla, Inc. ("Tesla") and have been terminated by Tesla in an ongoing mass layoff. Plaintiffs allege that beginning in about May or June 2022, Tesla initiated a mass layoff of employees at its sites across the country in an effort to eliminate 10% of its total workforce. (Compl. ¶ 15, Dkt. 1.) However, rather than providing sixty (60) days advance written notice of the layoffs to the employees who would be terminated, Tesla provided no advance notice at all. (Compl. ¶ 17-18, Dkt. 1.) Tesla's failure to provide advance notice of its mass layoff, which appears to be ongoing, constitutes a violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act").  As a result of Tesla's violations of the WARN Act, as a matter of law, Plaintiffs and each putative class member are entitled to back pay equaling the compensation they would have received during the required sixty (60) day notice period.  *See* 29 U.S.C. § 2104(a)(1)(A); *see also Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores,*

*Inc.*, 15 F.3d 1275, 1286 (5th Cir. 1994) ("damages in lieu of the WARN Act notice are to be calculated usin[g] the number of work days within the violation period.")

Plaintiffs now bring this Emergency Motion, pursuant to Fed. R. Civ. P. 23(d) for a protective Order to prevent Tesla from obtaining releases from the individuals who it is laying off.[1] As part of Tesla's ongoing mass layoffs, it has been asking employees to agree to release Tesla of all claims, including WARN Act claims, in exchange for a severance payment of just one or two weeks' pay and benefits. The separation agreement includes a full release of claims.[2]  Tesla has engaged in this practice notwithstanding that fact that these individuals are entitled to eight (8) weeks of severance pay as a matter of law "in lieu of the WARN Act notice." *Dillard Dep't Stores, Inc.*, 15 F.3d at 1286.  Even after the initiation of this action, Tesla continues to provide victims of its WARN Act violations with separation agreements that purport to release the claims pending before the Court (and for a *fraction* of the severance amount putative class members are entitled to as a matter of law).

The Court should not allow Tesla to short-circuit the WARN Act claims that have been filed in this case by seeking to collect releases of that claim while it is being litigated – from employees who have no reason to know that they have the right to 60 days' pay (rather than one week's pay) and who have not been informed that a class action case has been filed on their behalf seeking to recover this pay for them.  If left unchecked, Tesla may succeed in cutting off the rights

---

[1]     Plaintiffs respectfully ask the Court to promptly address this Motion as Tesla is continuing to obtain releases. Plaintiffs seek an immediate order directing Tesla to cease obtaining such releases, as it is more difficult to address the impact of the releases after they have been signed.

[2]     Egregiously, Tesla has even sought to obtain a full release from named Plaintiff John Lynch since this case was filed, despite the fact that he is clearly represented by counsel and has initiated this class action.

of thousands of potential class members (for a *de minimis* recovery), without them even knowing about this case and their rights.

As numerous courts have held, Rule 23(d) prohibits such unsupervised and deceptive communications with putative class members, where a defendant in a pending case attempts to obtain releases from class members that do not even inform the class members of what rights they have that are being released or that signing the agreement could prevent them from participating in a pending class action. *See, e.g.*, *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-0517-D, 2018 WL 4539114, at *5 (N.D. Tex. Sept. 21, 2018) (ordering corrective notice to members of a putative collective action who signed waivers in response to Defendant's *ex parte* communication and permitting such individuals to challenge the agreements as voidable); *Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2015 WL 9592535, at *3 (S.D. Fla. Dec. 31, 2015) (refusing to enforce arbitration agreements distributed during the pendency of a collective action lawsuit); *Spence v. Irving Holdings, Inc.*, 2010 WL 5609023, at *1 (N.D. Tex. Dec. 15, 2010) (courts have balanced parties' First Amendment rights with a court's role in regulating communication with potential class members "both before and after a class [is] conditionally certified under the FLSA" and have often prohibited misleading communications); *Guifu Li v. A Perfect Day Fran., Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010); *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *5–6 (N.D. Cal. July 8, 2010); *Burford v. Cargill, Inc.*, 2007 WL 81667, at *2 (W.D. La. Jan. 9, 2007).

In effect, Tesla's efforts to obtain releases from putative class members is akin to soliciting employees to opt out of the class before class notice has been disseminated, which is impermissible. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("When confronted

with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests . . . . Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule."); *see also Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 699 (W.D. Tex. 2015) (sanctioning Defendant's ex parte communication with class members designed to discourage participation in a collective action lawsuit and "allow[ing] Plaintiffs to send the corrective notice...to all [] class members by U.S. mail.  The corrective notice [was required to] be posted by Defendants at their places of business in a location visible to employees. Defendants [were also required to] bear the cost of sending the corrective notice, and [to] further pay Plaintiffs' reasonable attorneys' fees incurred in bringing th[e] Motion.").

Courts have curtailed defendants' ability to engage in these types of coercive and misleading communications with putative class members for good reason. Not only do they disrupt the proper function of the class action, but they implicate ethical prohibitions on communicating with represented parties.[3] *See Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. April 9, 2001).[4]

---

[3]     Indeed, Tesla has overtly crossed that ethical line by attempting to obtain such a release from named Plaintiff John Lynch. *See e.g., Larry James Oldsmobile-Pontiac-GMC Truck Co., Inc. v. General Motors Corp.*, 175 F.R.D. 234, 241-46 (N.D. Miss. Aug. 19, 1987) (sanctioning defendant's counsel where defendant obtained a release from a class representative through *ex parte* communication with defendant); *Pacheco*, 127 F. Supp. 3d at 699 (sanctioning Defendant's ex parte communication with class members designed to discourage participation in a collective action lawsuit and "allow[ing] Plaintiffs to send the corrective notice...to all [] class members by U.S. mail.  The corrective notice [was required to] be posted by Defendants at their places of business in a location visible to employees. Defendants [were also required to] bear the cost of sending the corrective notice, and [to] further pay Plaintiffs' reasonable attorneys' fees incurred in bringing th[e] Motion.").

[4]     As *Dondore* explained, "a class action is a 'truly representative suit,'" and "'class action representation' belongs to all parties, even 'asserted class members who were unaware of proceedings brought in their interest." *Dondore*, 152 F. Supp. 2d at 665 (quoting citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52 (1974)). "Furthermore, putative class members stand at least in a fiduciary relationship

As set forth below, Tesla's communications with putative class members, through its separation agreement, are misleading because they fail to inform the class members of the pending litigation and the rights that they are potentially giving up. *See Williams v. Sake Hibachi Sushi & Bar, Inc.*, 2018 U.S. Dist. LEXIS 162293, at *6-7 (finding "that the settlement agreements neglect to mention the instant case by name or to give the putative class members any other information that would allow them to make an informed decision to waive their rights. Absent evidence to the contrary, these failures, in addition to the failure to provide sufficient information regarding damages, lead to the conclusion that the settlement agreements constitute misleading communications.") (citing *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 U.S. Dist. LEXIS 139764, 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012) (finding a waiver misleading where it did not include, *inter alia*, any information regarding the class action, the complaint, or plaintiff's counsel's contact information); *Cty. of Santa Clara v. Astra USA, Inc.*, 2010 U.S. Dist. LEXIS 78312, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (explaining that communication was misleading for various reasons, including failure to inform potential class members about actual effects of damages methodology); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, 2001 U.S. Dist. LEXIS 13893, 2001 WL 1035132, at *5 (S.D.N.Y. Sept. 7, 2001) (deeming proposed release notice inadequate where it did not state, *inter alia*, who may be in the class, whether a class was certified, information about the status of the action, or information about how a potential class member might obtain more details about the case or contact plaintiff's counsel)).

Further, the communication is coercive because of the employment relationship between Tesla and its former employees. Employees who have lost their jobs are typically eager to get

---

with class counsel." *Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).

whatever additional pay that they can get and have no reason to know that they are entitled to more due to Tesla's violations of the WARN Act. In short, Tesla hopes to buy off these class members' claims for pennies on the dollar (without them even knowing about this case or the claims that have been asserted on their behalf) outside the supervision of the Court. *See Williams,* 2018 U.S. Dist. LEXIS 162293, at *9 (quoting *Wu*, 2011 U.S. Dist. LEXIS 60881, 2011 WL 2314778, at *6 ("[A] communication may be coercive where the defendant interferes with participation by potential class members in the lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation."). Therefore, Plaintiffs respectfully request the Court act promptly to prohibit such conduct.

For these reasons, not only should the Court enter a protective order prohibiting Tesla from continuing to obtain these separation agreements, it should also exercise its authority to invalidate the releases that Tesla has succeeded in obtaining since this lawsuit was filed. *See Williams*, 2018 WL 4539114, at *5 (ordering corrective notice to putative collective members who signed waivers in response to Defendant's *ex parte* communication and permitting such individuals to challenge the agreements as voidable); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015); *Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. 2014); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005); *see also Patel v. 7-Eleven, Inc.*, 322 F. Supp. 3d 244, (D. Mass. July 20, 2018) (noting that if plaintiffs ultimately prove that they were misclassified as independent contractors and that they were paid less than the Massachusetts Wage Act required, purported releases that the employer collected could be void).

## II.     FACTUAL BACKGROUND

Plaintiffs filed this class action lawsuit on June 19, 2022. Plaintiffs allege that in approximately May or June 2022, Tesla initiated mass layoffs from its facilities across the country and that Tesla violated the WARN Act by failing to provide any advance written notice to its employees prior to laying them off. (Compl. ¶¶ 15-21 Dkt. 1.)

Rather than providing its employees with proper sixty (60) days advance notice before laying them off, Tesla has instead been systematically terminating its employees effective immediately. (Jointer Decl. ¶ 4, Ex. 1; Lynch Decl. ¶ 4, Ex. 2; Nelson Decl. ¶ 4, Ex. 3; Sibley Decl. ¶ 4, Ex. 4; Strickland Decl. ¶ 4, Ex. 5; Walker Decl. ¶ 4, Ex. 6; Ward Decl. ¶ 4, Ex. 7.) Additionally, Tesla has been encouraging the employees who are being laid off to sign severance agreements in exchange for a modest severance payment generally consisting of one- or two-weeks' salary. (Jointer Decl. ¶ 5, Ex. 1; Lynch Decl. ¶ 7, Ex. 2; Nelson Decl. ¶ 5, Ex. 3; Sibley Decl. ¶ 5, Ex. 4; Strickland Decl. ¶ 5, Ex. 5; Walker Decl. ¶ 5, Ex. 6; Ward Decl. ¶ 5, Ex. 7.)

These severance agreements include a general release of claims that purport to fully release "any and all claims arising under any federal, state or local law or statute, including but not limited to . . . the Worker Adjustment and Retraining Notification Act . . . ." (Ex. A to Jointer Decl., Ex. 1; Ex. A to Lynch Decl., Ex. 2; Ex. A to Nelson Decl., Ex. 3; Ex. A to Sibley Decl., Ex. 4; Ex. A to Strickland Decl., Ex. 5; Ex. A to Walker Decl., Ex. 6; Ex. A to Ward Decl., Ex. 7.)

Although this lawsuit was filed on June 19, 2022, Tesla has continued to lay employees off without providing the required WARN Act notice, and it has continued to urge the employees who have been laid off to sign separation agreements for just one or two weeks' pay. (Lynch Decl. Ward

Decl. ¶ 4, Ex. 7.)[5]

## III.   ARGUMENT

### A.   Now that this Class Action has Been Filed, this Court Should Order Tesla to Cease All Communications with Class Members that Would Affect their Rights to Participate in this Litigation

Pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, this Court has broad authority to "require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members" and "impose conditions on the representative parties or intervenors." Fed. R. Civ. P. 23(d). In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court recognized a court's broad discretion to manage communications in class actions. *Id.* at 100-01 ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."). Courts generally require that the party moving for a protective order under Rule 23(d) must make two showings: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper function of the litigation." *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009).

The Court's discretion to enter appropriate orders under Rule 23(d) facilitates the Court's obligation to "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Rule contemplates "that putative class members will make an informed decision about their decision to opt out of a class," *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000), and thus imposes a duty upon the court "to ensure

---

[5]    Tesla even solicited such an agreement from named Plaintiff John Lynch, despite the fact that he is clearly represented by counsel. (Lynch Decl. ¶¶ 6-7, Ex. 2.)

that all putative class members have a genuine choice" about whether or not to participate in an action. *Id.*; *see also Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 2009 WL 773869, at *4 (N.D. Ohio Mar. 19, 2009) ("class members need to be able to make an informed decision on participation"); *see generally Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 841 (5th Cir. 1982) (noting the "trial court's affirmative duty as monitor and guardian for the interests of absent class members"). It is obvious that "there are a number of factors that class members are entitled to know before deciding whether or not to opt out of any class." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d at 1243-44. As courts have recognized, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner*, 751 F.2d at 1203.

The Court's authority to regulate communications under Rule 23(d) applies equally in the pre-certification context when a class has not yet been certified. For example, in *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 634 (N.D. Tex. 1994), the court limited the defendant's communications with class members prior to certification, noting that "the effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class." *See also Guifu Li*, 270 F.R.D. at 518 ("the underlying rationale… does not depend on the certification of the class but instead on the inherent undermining of the class action process when [exclusion agreements] are solicited *ex parte*."); *see also County of Santa Clara*, 2010 WL 2724512, at *5–6 (invalidating releases obtained through misleading *ex parte* communications with putative class members prior to class certification); *Keystone Tobacco Co., Inc. v. U.S. Tobacco*

*Co.*, 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (Rule 23(d) provides authority for court to regulate communications between a party and class members, even before a class has been certified); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997) (recognizing that Rule 23 permits a court to limit contact between defendants and a not yet certified class); *Haffer v. Temple Univ. of Commonwealth Sys. Of Higher Educ.*, 115 F.R.D. 506, 512 (E.D. Pa. 1987) (same).

Like in the *Belt* and *Williams* cases, here "the timing of defendant's [Tesla] contact and solicitation corroborates a motive to discourage absent class members from joining the suit. *Williams*, 2018 U.S. Dist. LEXIS 162293, at *10 (citing *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003). Accordingly, the Court should exercise its authority to prohibit Tesla from continuing to seek releases from the employees it is laying off, where it is offering far less severance than the employees would be entitled to under the WARN Act and where the employees have no reason to know yet of their rights or that this case has been filed on their behalf.[6]

In *Williams*, Judge Fitzwater was faced with an employer's similar scheme to deprive FLSA collective members of their rights to benefit from a collective action through unsupervised communications with class members, and held that class members should still receive "information that would allow them to make an informed decision to waive their rights." 2018 WL

---

[6]      Tesla's tactic is similar to efforts by employers to contract around the requirements of the wage and hour laws, which courts and legislatures have rejected. For example, the Massachusetts Wage Act includes a provision stating that "[n]o person shall by special contract with an employee or by any other means exempt himself from this section." The Massachusetts Supreme Judicial Court has construed that language strictly, finding that "[u]nder the Wage Act, the employer's duty to timely pay all wages earned cannot be overcome by an employee's assent, both because § 148 makes the 'special contract' prohibition unconditional and for reasons of public policy." *Camara v. Attorney Gen.*, 458 Mass. 756 760 (2011); *see also Crocker v. Townsend Oil Co.*, 464 Mass. 1, 13 (2012) (recognizing that permitting the parties to contract around the Wage Act would lead to a scenario where "the strong protections afforded by the Wage Act could be unknowingly frittered away under the cover of a general release in an employer-employee termination agreement.").

4539114, at *3. The defendant in *Williams*, after the initiation of the action, circulated releases to class members that included a waiver of "any right to opt-in to a class action suit under the [FLSA], which [they] may have against [defendants]." *Id.* at *1 (brackets in original). In finding that these waivers were subject to challenge, the Court explained that the failure to inform class members of the existence of the action or their rights thereunder was itself misleading communication that deprived class members of their ability to provide their informed consent:

> The court also finds that the settlement agreements **neglect to mention the instant case by name or to give the putative class members any other information that would allow them to make an informed decision to waive their rights**. Absent evidence to the contrary, these failures, in addition to the failure to provide sufficient information regarding damages, lead to the conclusion that the settlement agreements **constitute misleading communications**.

*Id.* at *3 (emphasis added).

The *Williams* court ultimately found "that a corrective notice is warranted due to defendants' omission of pertinent, accurate case information" in the waivers. *Williams*, 2018 WL 4539114, at *6. Here, like in *Williams* and the numerous other authorities cited *supra*, Defendant "usurped the duty and authority of [the] Court to monitor communications with putative class members and to ensure that the information provided regarding this litigation and the putative members' rights in proceeding in the action is timely and accurate" and "undermined the integrity of the judicial process and potentially confused and misled putative class members." *Tomkins v. Amedisys, Inc.*, No. 3:12-CV-01082-WWE, 2014 WL 129401, at *2 (D. Conn. Jan. 13, 2014). This Court should not countenance Tesla's inherently deceptive and misleading tactics. Accordingly, the putative class members who never received notice of the claims in this case should not be placed in a situation where they may be misled into a releasing their claims.

Like the defendant's conduct in *Williams,* here Tesla's conduct presents the real potential

of depriving class members of their opportunity to participate in this case or otherwise vindicate

their WARN Act claims. The continued dissemination of Tesla's separation agreement containing

the release will, without a doubt, reduce the efficacy of Rule 23 by preventing the ability of class

members to participate in litigation brought on their behalf and limiting Tesla's liability without

court oversight. As such, this Court has the authority to act to prevent Tesla's contact with class

members from impinging on their rights.

The need to protect these employees' ability to participate in the class here is particularly

acute, because the release has been presented in an inherently misleading and coercive context.[7]

As described above, nowhere does Tesla's separation agreement inform the employees that there

is an obligation for Tesla to provide sixty (60) days written advance notice of a mass layoff and that

Tesla had failed (and continues to fail) to meet that obligation. Nor does the agreement inform the

employees of the pendency of this class action challenging Tesla's WARN Act failure. *See*

*O'Connor v. Uber Technologies, Inc.*, 2014 WL 1760314, at \*7 (N.D. Cal. May 2, 2014) ("Courts

---

[7]     That these releases were obtained in the context of an employer-employee raises intrinsic concerns about coercion. *See Ojeda-Sanchez*, 600 F. Supp. at 1379-80 ("[W]here the . . . class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive.") (quoting *Belt*, 299 F. Supp. 2d at 688); *see also Brown v. Mustang Sally's Spirits & Grill, Inc.*, 2012 WL 4764585, \*6 (W.D.N.Y. Oct. 5, 2012) ("Where defendants are also the employers of potential class action plaintiffs, the 'workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in the litigation.") (internal citation omitted); *Austen v. Catterton Partners V, LP*, 831 F. Supp. 2d 559, 568 (D. Conn. 2011) ("When a defendant is in an ongoing, current business relationship with members of a putative class, for example an employment relationship, it may be prudent to preempt the defendant's ability to use the relationship and pressure class members to make factual concessions or settle claims."). Indeed, some of these employees may sign this agreement in the hopes that they may eventually be able to get their jobs back with Tesla, as Elon Musk has tweeted that total headcount will ultimately increase. *See* Elon Musk Backtracks on Job Cuts, Says Tesla Salaried Staff to be 'Fairly Flat,'" Reuters, June 5, 2022, https://www.reuters.com/business/autos-transportation/musk-says-teslas-total-headcount-will-increase-over-next-12-months-2022-06-04/.

have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action [constitutes] misleading communications which the court may limit.") (collecting cases).[8]

These types of communications also implicate ethical rules prohibiting communication with represented parties. For example, in *Dondore*, 152 F. Supp. 2d at 666, the court explained that "[t]he 'truly representative' nature of a class action affords its putative members certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct." *Id.* (citing *Am. Pipe & Constr. Co*, 414 U.S. at 551). Further:

> As a practical matter, a court cannot decide the issue of class certification immediately upon the filing of the complaint. Discovery is often required and the preparation and study of briefs is necessary. Thus, certain benefits must be afforded the putative class members in the interim. As the tolling of limitations is needed to further the salutary purposes of class actions, restraints are likewise needed against communications with putative class members until the issue of class certification can be determined.

*Id.*; *see also Belt*, 299 F. Supp. 2d at 667-70 (sanctioning and enjoining the employer from communicating *ex parte* with potential class action members because the employer intentionally attempted to subvert the court's role in a FLSA collective action by unilaterally sending a misleading and coercive letter to potential plaintiffs that encouraged those persons not to join); *Haffer*, 115 F.R.D. at 512 (holding pre-certification communications by defense counsel urging potential class members not to meet with class counsel violated Model Code DR 7-104).[9]

---

[8]     In an analogous situation in a collective action under the Fair Labor Standards Act, 29 U.S.C. 216(b), the court in *Potts v. Nashville Limo and Transport LLC*, 2016 WL 1622015, at \*15 (M.D. Tenn. April 19, 2016), prohibited further communication by defendant with opt-in plaintiffs where defendant attempted to enter into settlement agreements without providing enough information for the opt-in plaintiffs to evaluate their claims.

[9]     The fact that Tesla attempted to obtain a release from named Plaintiff John Lynch after the commencement of this lawsuit is an especially egregious example of Tesla's misconduct and very likely **did** constitute a blatant violation of the Nevada Rules of Professional Conduct. *See* Nevada Rule of Professional

Courts frequently enter protective orders where defendants have sought to obtain releases that omit essential information regarding the claims and putative class actions at issue, because without this information, the defendants' communications are viewed as misleading and therefore abusive. *See County of Santa Clara*, 2010 WL 2724512 at *3-4; *see also Kutzman v. Derrel's Mini Storage, Inc.*, 2018 WL 6625791, at *8 (E.D. Cal. Dec. 18, 2018) ("[T]he Court cannot countenance Defense counsel's actions in attempting to mislead and coerce Defendant's current and former employees into settling prior to certification, possibly adverse to their interests."); *Slavkov*, 2015 WL 6674575, at *2 ("courts may limit communications that improperly encourage potential class members to not join the suit, especially if they fail to provide adequate information about the pending class action."); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010) ("A defendant's failure to mention **even an uncertified class action** in securing settlements or releases from putative class members may be 'misleading.'") (emphasis added); *Westerfield*, 2007 WL 1062200, at *3 ("A risk exists, then, that franchisees might sign the releases without knowing the implications vis-à-vis rights they might assert in the instant action."); *Burford*, 2007 WL 81667, at *2 ("[T]he Court finds that the use of the general receipt and release which is being used by the Defendant in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law.").

Here, Tesla continues to solicit and obtain releases through misleading and coercive means

---

Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."); *Larry James Oldsmobile*, 175 F.R.D. at 241-46 (sanctioning defense counsel where they obtained a release from an absent class member, because "[a]n attorney simply may not communicate with a represented party about the subject matter of the representation absent consent from the party's lawyer or lawful authorization.").

by presenting employees who are facing layoffs with a "separation agreement" that does not give or provide  employees with any information about the instant action, their rights, and any information that they may be entitled to more as the result of Tesla's WARN Act violation.[10] These employees, who are now (or will shortly be) out of work, also have great incentive to maintain a good relationship with Tesla so that they can be hired to work in other Tesla divisions or rehired to their current positions in the future. Thus, they face great pressure to sign the releases and lack the information to understand that they will be waiving their claims in this case. Furthermore, Tesla seeks these releases so that it can continue to violate the law without facing any consequences for doing so. The Court should not permit Tesla to engage in this conduct.

      **B.**    **The Court Should Also Enter an Order Striking all Releases That Tesla has Procured Since this Case was Filed**

As stated before, Rule 23(d) gives the Court broad authority to issue orders and "impose conditions on the representative parties or the intervenors" to protect class members and fairly conduct the action at any stage on the litigation.  Courts applying this standard have found that *ex parte* communications soliciting releases or discouraging participation in a case undermine the purposes of Rule 23 and require curative action by the court. This includes the power to strike any supposed releases or exclusion agreements that result from this impermissible communication. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 252 (refusing to enforce arbitration agreements that would prevent putative class members from participating in case);

---

[10]     *See, e.g.*, *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, at *1-2, 6 (N.D. Cal. Dec. 6, 2013) (observing that "the risk of interfering with the pending class action and the need for a limitation on communication with the class that adversely affects their rights is palpable," because "[t]he arbitration provision at issue includes a class action waiver, purporting to contractually bar Uber drivers from participating and benefiting from any class actions.").

*Slavkov*, 2015 WL 6674575 at *2 ("A curative notice shall also be sent to all recipients of the Defendants' communications, notifying them that the settlement agreements are invalid."); *Camp v. Alexander*, 300 F.R.D. at 625 (ordering opt-out declarations invalid and requiring corrective notice in the form prescribed by the court).

For example, the Eleventh Circuit upheld the district court's invalidation of opt-out forms obtained through *ex parte* telephone calls to a defendant bank's customers in *Kleiner*, 751 F.2d at 1202-03. The court noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests ... [s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." *Id.* at 1202-03; *see also*, *Ontiveros*, 2017 WL 604307, at *4 (invalidating releases that were intended to extinguish the claims at issue in the case because the releases did not include sufficient information about the case, and ordering defendant to send a curative notice); *Cheverez*, 2016 WL 861107, at *6 (Because "Defendants' misleading actions clearly frustrate the purpose of Rule 23," the court invalidated the releases "to the extent they purport to immunize Defendants from paying full compensation to injured class members" and ordering defendants to provide "curative notice informing claimants of their right to participate in the litigation).

Likewise in *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 919, 924 (11th Cir. 2014) (unpublished), the court refused to enforce arbitration agreements that were obtained prior to the issuance of notice and would have prevented employees from participating in a collective action. *See also OConner v. Agilant Sols., Inc.*, 2020 WL 1233749 (S.D.N.Y. Mar. 12, 2020) (finding arbitration agreements unenforceable where defendant circulated the agreements to putative

collective members during the pendency of plaintiffs' conditional certification motion); *Espinoza*, 2015, WL 9592535, at *3 (refusing to enforce arbitration agreements that were distributed during the pendency of an FLSA collective action that would have prevented workers from pursuing their claims in the case) .

Again, Tesla has solicited and obtained release agreements from its employees, through coercive and misleading communications, despite the fact that it failed to provide the required notice, and therefore violated the WARN Act and continues to solicit and obtain releases even after it learned of this lawsuit.[11] At the same time, Tesla has not provided any information regarding this case in conjunction with the release– in these unique circumstances, it is abundantly clear that the releases that Tesla has obtained since this case was filed should be invalidated.

Here, striking or voiding the releases that Tesla obtained is appropriate, particularly in employment class action context, where the employer—Tesla—solicits and continues to solicit a release of claims during a pending class action. As the Eleventh Circuit observed, "[u]nsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of susceptible individuals on the other," *Kleiner*, 751 F.2d at 1206, and this is especially true in the context of an employment relationship. *See Williams*, 2018 WL 4539114, at *4.

Given the facts here – a one-sided general release offered in exchange for one- or two-

---

[11]     The Complaint in this matter was filed on June 19, 2022, and served on Tesla on June 23, 2022. However, it is clear that Tesla received notice of the lawsuit almost immediately after it was filed, given the fact that the lawsuit received significant press. *See, e.g.*, Tesla Sued by Former Employees Over 'Mass Layoff,' Yahoo News, June 20, 2022, https://www.yahoo.com/news/tesla-sued-former-employees-over-232916845.html. Indeed, Elon Musk spoke publicly about the suit on June 21, 2022 (two days after the Complaint was filed). *See* Tesla Sued by Former Employees Over 'Mass Layoff,' https://arstechnica.com/tech-policy/2022/06/lawsuit-tesla-broke-us-law-by-not-providing-60-day-notice-before-mass-layoff/.

week's severance (which is a small portion of class members' actual damages of sixty (60) days pay and benefits) – the Court's intervention is necessary to protect not only the claims of the proposed class members but also the propriety and fairness of the class action proceeding. Therefore, in addition to granting a protective order prohibiting Tesla or its counsel from continuing to try and obtain releases from its employees it is laying off, the Court should strike the alleged releases that have been obtained since this case was filed. The Court's authority includes the power to issue an order ameliorating the effect of past misleading, coercive communications between Tesla and the proposed class by striking the releases. *See Guifu Li*, 270 F.R.D. at 517-19 (refusing to give effect to "opt-out" forms obtained by employer).

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter a protective order barring Tesla from seeking separation agreements with the employees that it is laying off that would have them unwittingly release their claims that have been filed on their behalf in this action.  The Court should also invalidate the releases that Tesla has obtained from putative class members since this lawsuit was filed.

Dated: July 5, 2022                    Respectfully submitted,


By: */s/ Drew N. Herrmann*
      Drew N. Herrmann
      Texas Bar No. 24086523
      drew@herrmannlaw.com
      Pamela G. Herrmann
      Texas Bar No. 24104030
      pamela@herrmannlaw.com
      Allison H. Luttrell
      Texas Bar No. 24121294
      allison@herrmannlaw.com
      **HERRMANN LAW, PLLC**
      801 Cherry St., Suite 2365
      Fort Worth, TX 76102
      Phone: 817-479-9229
      Fax: 817-840-5102

    -AND-

      Harold L. Lichten, pro hac vice anticipated
      hlichten@llrlaw.com
      Shannon Liss-Riordan, pro hac vice anticipated
      sliss@llrlaw.com
      Thomas Fowler, pro hac vice anticipated
      tfowler@llrlaw.com
      Zachary Rubin, pro hac vice anticipated
      zrubin@llrlaw.com
      Matthew Patton, pro hac vice anticipated
      mpatton@llrlaw.com
      **LICHTEN & LISS-RIORDAN, P.C.**
      729 Boylston Street, Suite 2000
      Boston, MA 02116
      Tel. 617-994-5800
      Fax: 617-994-5801

      ATTORNEYS FOR PLAINTIFFS
      AND CLASS MEMBERS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2022 this document will be served on Tesla, Inc.

via first-class mail at: 1 Tesla Road, Austin, TX 78725

*/s/ Drew N. Herrmann*
Drew N. Herrmann