IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN LYNCH AND DAXTON HARTSFIELD, Individually and for Others similarly situated, | § § § § | |
| PLAINTIFFS, | § § | CASE NO. 1:22-CV-00597 |
| v. | § § | |
| TESLA, INC., | § § | |
| DEFENDANT. | § § | |

**DEFENDANT'S MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITRATION
UNDER RULE 12(B)(1) or 12(B)(3)**

Tesla moves to dismiss and compel Plaintiffs John Lynch and Daxton Hartsfield's claims to individual arbitration under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) because both signed binding arbitration agreements containing class action waivers—as did all of the individuals in the putative class Plaintiffs seek to represent.

Plaintiffs entered into the subject arbitration agreements over three years prior to initiating this lawsuit. Hartsfield also entered into an enforceable separation agreement with Tesla before he filed this lawsuit, in which he released the claims he now asserts here and also agreed for a second time to arbitrate all employment-related claims against Tesla.

The above facts are indisputable and Plaintiffs' claims in this case are baseless. Tesla engages in a bi-annual process of right-sizing its workforce and discharging low performing employees—like Plaintiffs. As part of this process, Tesla always ensures compliance with the Worker Adjustment Retraining Notification ("WARN") Act. Here, Plaintiffs were not discharged as part of a WARN triggering event and were not entitled to WARN notice—which Tesla will demonstrate when this case is properly compelled to individual arbitration.

1

## I.   BACKGROUND

For at the least the past 15 years, Tesla has entered into mutual binding arbitration agreements with all of its employees.  *See* Exhibit A (Decl. of Benjamin Flesch) at ¶ 3.  Plaintiffs are no exception.  On May 29, 2017, Tesla sent Lynch an offer for a Maintenance Technician position that contains an arbitration provision.  *See* Exhibit A-1.  On August 28, 2017, Tesla sent Hartsfield a similar offer letter for a Quality Technician position that contains an identical arbitration provision.  *See* Exhibit A-2.

The arbitration provision in the offer letters is broad and provides that Plaintiffs and Tesla mutually agree that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [Plaintiffs'] employment, or the termination of ["Plaintiffs'] employment, will be resolved, to the fullest extent permissible, by ***final, binding and confidential arbitration*** . . . ."  *See* Exhibit A-1 & A-2 at p. 3 (emphasis in original).  Tesla and Plaintiffs also mutually agreed to waive the right to bring or participate in a class action as the arbitration provision provides, "any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding."  *Id*.

Lynch electronically signed and accepted the offer letter and agreed to be bound by the arbitration provision on June 16, 2017.




*See* Exhibit A-1 at p. 8.

Hartsfield signed and accepted the offer letter and agreed to be bound by the arbitration provision on August 28, 2017.  *See* Exhibit A-2 at p. 8.





*See* Exhibit A-2 at p. 8.

As reflected in the above signatures, Plaintiffs received and signed the offer letters through the Taleo system.  *See* Exhibit A at ¶¶ 5–8.  Tesla used the Taleo system at the time Plaintiffs were hired to manage the application and onboarding process for its employees.  *Id*.  Plaintiffs, like all applicants at the time, created Taleo accounts using their first names, last names, personal e-mail addresses, and telephone numbers.  *Id*. at ¶ 5.  They then created their own unique user names and passwords to access the Taleo system and upload their resumes and receive communications from Tesla, including their offer letters.  *Id*.  Plaintiffs also accepted and electronically signed their offer letters through the Taleo system by clicking on a button entitled "Accept and eSign offer."  *Id*. at ¶ 6.  They were then required to enter their name, last name, email address, and unique, individually created passwords to further confirm their acceptance of their respective offer letters.  *Id*.  Once accepted, a unique signature ID was also affixed by the Taleo system to the header of every page of the offer letters, which shows that those pages were presented to Plaintiffs for review before they electronically signed and accepted the terms of the letters.  *Id*. at 7–8.

## II.     **Standard of Review**

The Fifth Circuit Court of Appeals has not definitively decided whether a pre-answer motion to compel arbitration should be brought under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) and Tesla, therefore, asserts this Motion under both rules. *See Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) ("We have held that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration.") (internal citations omitted); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F. 3d 898, 902 (5th Cir. 2005) (noting that "circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum selection or arbitration clause," but electing to analyze the subject motion to compel arbitration under Rule 12(b)(3) because "our court has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause . . . .").

Under Rule 12(b)(1), the burden "is on the party asserting jurisdiction" to "prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and the evidence." *Donahoe*, 751 F.3d at 303.  Similarly, once venue is challenged under Rule 12(b)(3), "the burden is on the plaintiff to establish that the district he chose is a proper venue." *Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 589 (5th Cir. 2013).  The Court can find that personal jurisdiction is lacking under Rule 12(b)(1), or that venue is improper under Rule 12(b)(3), based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012); *In re FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

DB1/ 131544208.2

### III.     ARGUMENT

A.     **As Mandated by the Federal Arbitration Act Plaintiffs' Claims Should be Dismissed and Compelled to Arbitration under Either Rule 12(b)(1) or 12(b)(3).**

The Federal Arbitration Act ("FAA"), which governs the subject arbitration provision, provides that "pre-dispute arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[1] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (quoting 9 U.S.C. § 2.). The FAA permits an aggrieved party to file a motion to dismiss and compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *See American Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (citing 9 U.S.C. § 4).

"Federal courts have supported a strong policy in favor of arbitration." *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 906 (5th Cir.2005). Accordingly, "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing invalidity." *Carter*, 362 F.3d at 297. Further, "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration" and "individuals seeking to avoid the enforcement of an arbitration agreement face a high bar." *Id*.; *Moses H. Cone Mem. Hosp., v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

Courts employ a two-step process in assessing a motion to compel arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009). At step one, the Court considers merely

---

[1]     The FAA applies to contracts "evidencing a transaction involving commerce" and "[t]he requirement that the underlying transaction involve commerce 'is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause.'" See 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp*., 460 U.S. 1, 24, (1983). It is beyond dispute that the offer letters containing the arbitration agreements here and Plaintiffs employment with Tesla involve interstate commerce as, among other things, Tesla distributes products from its various locations through the normal channels of interstate commerce and Plaintiffs worked on products and used materials in the course of their employment that were both received from and shipped to states outside of the state in which they worked. *See* Exhibit A at ¶ 1.

whether the plaintiff has agreed to arbitrate the dispute at issue. Id. at 233–34. This step requires the Court to ask only: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the agreement. *Webb v. Investascorp, Inc.*, 89 F.3d 252, 256-57 (5th Cir. 1996). Once the Court is satisfied that the parties agreed to arbitrate and that the dispute falls within the scope of the agreement, the second step is to determine whether any federal statute or policy renders the claims non-arbitrable, despite the strong presumption in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

As established below: (1) the arbitration provision to which Plaintiffs agreed to be bound is valid; (2) Plaintiffs' claims against Tesla fall within the scope of the arbitration provision; and (3) the Court should strike Plaintiffs' improvident class claims and compel Plaintiffs to individual arbitration. Further, once it is determined that all of the issues raised in the district court must be submitted to arbitration, "[t]he weight of authority supports dismissal of the case" as opposed to staying the action pending arbitration. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."). This is so because "retaining jurisdiction and staying the action will serve no purpose." *Id*.

        **1.**        **Plaintiffs Offer Letters Contain Valid and Enforceable Arbitration Provisions.**

Federal courts look to the state law of contract formation to determine whether a valid arbitration agreement exists. *See OPE Intern. LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–456 (5th Cir. 2001) (observing that "whether there is a valid agreement to arbitrate . . . is governed by ordinary state-law contract principles"). Here, Plaintiffs' offer letters each contain a California choice-of-law provision. *See* Exhibits A-1 & A-2 at p. 4.

"Under California law, a contract is valid if there is mutual assent between the parties and valid consideration." *Totten v. Kellogg Brown & Root, LLC,* 152 F. Supp. 3d 1243, 1250 (C.D. Cal. 2016). California's Uniform Electronic Transaction Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form," and specifies that "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." Cal. Civ. Code § 1633.7(a)-(b); *see also Mikhak v. Univ. of Phoenix,* No. C16-00901 CRB, 2016 WL 3401763, at *6 (N.D. Cal. June 21, 2016) ("Electronic signatures and clicking 'Accept' are valid means of expressing assent to a contract.").

In this case, Plaintiffs "accepted" and "signed" their offer letters. *See* Exhibit A-1 & A-2 at p. 8. Specifically, the executed offer letters evince that Plaintiffs utilized a unique signature ID to access and electronically sign the document. *See* Exhibit A at ¶¶ 5–8. Moreover, while Plaintiffs' electronic "acceptance" and "signature" of the offer letters cannot be seriously disputed, Plaintiffs also "implicitly accepted" the offer letters through continued employment with Tesla. *See Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 420, 100 Cal.Rptr.2d 818 (2000) ("This means that a party's acceptance of an agreement to arbitrate may be express...or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer.").

There is also ample consideration for the arbitration agreements. First, the parties mutually agreed to arbitrate. *See* Exhibit A-1 & A-2 at p. 3 ("you and Tesla agree that any and all dsiputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permissible, by ***final, binding and confidential arbitration*** . . . ."). An agreement to be mutually bound by arbitration is sufficient consideration. *See Cir. City Stores, Inc. v. Najd,* 294 F.3d 1104, 1108 (9th Cir. 2002) (a "promise to be bound by the arbitration process itself serves as adequate consideration"). And

7

second, it is undisputed that Plaintiffs worked for Tesla after accepting the offer letters, and continued employment constitutes sufficient consideration for an arbitration agreement. *See Asfaw v. Lowe's HIW, Inc.,* No. LA CV14-00697 JAK, 2014 WL 1928612, at *3 (C.D. Cal. May 13, 2014) ("However, it is undisputed that, in exchange for agreeing to arbitrate disputes, Plaintiff either accepted Defendant's offer of employment or continued working for Defendant [and] [c]ontinued employment constitutes consideration for an agreement to arbitrate.").

Finally, well-established case law precedent establishes the validity of the arbitration provision in question. At least three federal district courts have held that Tesla offer letters containing substantively identical arbitration provisions to those at issue here were enforceable and have compelled arbitration pursuant to their terms. See *Hansen v. Tesla, Inc.,* No. 3:19-cv-00413, 2020 WL 4004800 *1, *3 (D. Nev. July 15, 2020); *Williams v. Tesla, Inc.,* No. CV 18-4120, 2018 WL 6499867, at *1, *3 (D.N.J. Dec. 11, 2018); *Hidalgo v. Tesla Motors, Inc,* No. 5:15-CV-05185, 2016 WL 3541198, at *1, *5 (N.D. Cal. June 29, 2016).

### 2. The Arbitration Provision Covers Plaintiffs' Claims.

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Jha v. Asurgen Inc.,* No. 1:19-CV-1070-RP, 2020 WL 7029157, at *4 (W.D. Tex. Nov. 30, 2020) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986)). Here, there can be no dispute that the subject arbitration provision covers Plaintiffs' claims as it applies to all disputes, claims, or causes of action "arising from or relating to [Plaintiffs'] employment, or the termination of [Plaintiffs'] employment" and Plaintiffs' sole allegation in this lawsuit is that Tesla terminated their employment and the employment of the members of the alleged class in violation of the WARN Act.

### 3. The Court Should Compel Individual Arbitration and Strike Plaintiffs' Class Claims.

Plaintiffs' claims must be compelled to individual arbitration consistent with the terms of the binding arbitration provision in which Tesla and Plaintiffs mutually agreed that "any claim, dispute, or cause of action must be brought in a party's in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Exhibit A-1 & A-2 at p. 3. This waiver is enforceable as "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so" and it is now well-established that class action waivers like the one at issue here are fully enforceable under the FAA. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010) (emphasis in original); *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1418 (2019).

In compelling individual arbitration, the Court should also strike Plaintiffs' improvident class claims both because Plaintiffs waived the right to bring their lawsuit as a class action and because all of the individual class members whom Plaintiffs seek to represent signed the same or a similar arbitration provision to the one Plaintiffs signed and in doing so waived the right to participate as class members in this case. *See* Exhibit A at ¶ 3; *In re Online Travel Co.*, 953 F. Supp. 2d 713, 725 (N.D. Tex. 2013) (striking the plaintiff's class claims because "[a]ny claims by absent class members bound by the [subject arbitration agreement] would be impertinent, as those class members would be bound to individually arbitrate their claims."); *see also Daniels v. Virginia Coll. at Jackson,* No. 3:11-CV-496-WHB-LRA, 2011 WL 13182997, at *6–7 (S.D. Miss. Nov. 29, 2011), *aff'd,* 478 F. App'x 892 (5th Cir. 2012) (upon finding named plaintiff's claims were subject to mandatory arbitration, court found plaintiff's "class action allegations have been rendered moot, and should be dismissed as such").

## IV. Plaintiff's Emergency Motion for a Protective Order Should be Denied

As a final matter, on July 5, 2022, Plaintiffs filed an Emergency Motion for Protective Order asking the Court to enjoin Tesla under Rule 23(d) from sending separation agreements to its employees and invalidating separation agreements with others. *See* Doc. No. 7. As will be more fully explained in Tesla's forthcoming response, which is due by July 19, 2022, Plaintiffs' motion should be denied in its entirety for at least four separate reasons.

First, Plaintiffs' motion should be denied because it will be moot after Plaintiffs' claims are properly compelled to individual arbitration through Tesla's present motion to compel.

Second, it would be wholly improper and unprecedented for a Court to enjoin Tesla's alleged disputed acts under Rule 23(d) on a class-wide basis where, as here, there is no likelihood a class will eventually be certified because the plaintiffs signed arbitration agreements precluding them from representing a class and all of the members of the proposed class have signed enforceable agreements precluding them from participating as class members in this case.

Third, Plaintiffs have not satisfied their burden of showing that Tesla engaged in any misconduct, much less serious misconduct as required to attain relief under Rule 23(d), because: (i) Plaintiffs and all of the potential class members entered into binding arbitration agreements with Tesla before this lawsuit was filed—which distinguishes this case from all of the authority cited in Plaintiffs' motion; (ii) it is Tesla's standard practice to issue separation agreements to involuntarily terminated employees, and Hartsfield received and signed such agreement prior to the initiation of this lawsuit; and (iii) Plaintiffs have presented no evidence of any potential class members having received and signed a separation agreement after the initiation of this lawsuit.

Fourth, the relief Plaintiffs request is impermissibly overbroad, unreasonable, and untenable because, among other things: (i) it asks the Court to invalidate binding separation agreements entered into between Tesla and individuals prior to the initiation of this lawsuit; and

(ii) there is no way for the Court or Tesla to determine who is a member of the proposed class, if anyone, and who would, in turn, be effected by Plaintiffs' proposed protective order as the fail-safe class definition in Plaintiffs' Complaint only encompasses individuals who are entitled to WARN notice, which Tesla contends is nobody at this juncture and there has been no finding to the contrary.

## V.    CONCLUSION

For the foregoing reasons, Tesla asks the Court to dismiss Plaintiffs' individual and class action claims under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) and compel Plaintiffs' to individual arbitration.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/Robert E. Sheeder*
Robert E. Sheeder
Texas Bar No. 18174300
robert.sheeder@morganlewis.com
Clayton M. Davis
Texas Bar No. 24092323
clayton.davis@morganlewis.com
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: (214) 466-4000
Facsimile: (214) 466-4001

T. Cullen Wallace
State Bar No. 24072412
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T:  713.890.5000
F:  713.890.5001
cullen.wallace@morganlewis.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July 2022, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Robert E. Sheeder*
Robert E. Sheeder