# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN LYNCH and DAXTON** | § | |
| **HARTSFIELD, individually and on** | § | |
| **behalf of all others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. 1-22-cv-00597-RP** |
| | § | |
| **TESLA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**DECLARATION OF BENJAMIN FLESCH**</u>

I, Benjamin Flesch, hereby declare and state:

I am currently employed by Tesla, Inc. ("Tesla") as a Senior Analyst, Recruiting. In connection with my position at Tesla, I am familiar with Tesla's employment policies and practices, as well as its hiring procedures. I have personal knowledge of the facts set forth in this declaration, except in instances stated on information and belief. If called to testify as a witness, I could and would competently testify thereto.

1.      Tesla is an automotive company with a mission to transition the world to sustainable energy through designing, manufacturing, and selling electric cars and solar products throughout the United States and the world. Tesla's products are distributed from its various locations in the United States through the normal channels of interstate commerce. The employees of Tesla's facilities, Plaintiffs John Lynch and Daxton Hartsfield, also work on products and use materials in the course of their employment that are both received from and shipped to states outside the state in which they work, thereby involving interstate commerce.

2.      In the course and scope of my duties, I oversee Tesla's electronic applicant tracking and onboarding process and the associated technology systems, and I have access to Tesla's employee records, which include accepted offer letters.  Tesla regularly maintains these documents in the ordinary course of business.  I am also familiar with Tesla's hiring procedures and its employment policies and practices.

3.      I am familiar with Tesla's current and past practice of providing new employees arbitration agreements. For at least the past fifteen years, Tesla has required all of its employees to sign arbitration agreements at the outset of their employment, including plaintiffs John Lynch ("Lynch") and Daxton Hartsfield ("Hartsfield") (together, "Plaintiffs").

4.      I have reviewed Tesla's personnel profiles, including the accepted offer letters, related to Plaintiffs, both of whom were hired in 2017.  At the time Plaintiffs were hired, Tesla used a system called Taleo ("Taleo") to manage the application and onboarding process.  I am familiar with Tesla's use of Taleo to track applicants for employment, issue offer letters, and store accepted offer letters, as well as the various authentication and security parameters utilized by the Taleo system.

5.      At the time of Plaintiffs' hire, applicants were required to create a Taleo account using their first name, last name, personal email address, and personal telephone number. Applicants were also required to create a username and password.  If Tesla chose to extend an offer of employment to an applicant who completed the application process, Tesla sent an email to the applicant through the Taleo system using the personal email address that the applicant provided during the application process.   The email from Tesla contained a link to the employment offer letter.  It was Tesla's policy that all offer letters Tesla sent through the Taleo system contain arbitration agreements.

6.      To open an offer letter and arbitration agreement, an applicant was required to log into the Taleo account using the unique username and password the applicant created during the application process.  After logging in, applicants were presented with the offer letter containing the arbitration agreement with the ability to accept or decline.  To accept the offer of employment pursuant to the offer letter and arbitration agreement, the applicant was required to click on a button entitled "Accept and eSign Offer."  The applicant was then prompted to re-enter his or her first name, last name, email address, and unique password, which further indicated an intention to accept the offer of employment pursuant to the offer letter and arbitration agreement.

7.      On June 16, 2017, Lynch electronically signed the offer letter and arbitration agreement presented to him through the Taleo system.  A true and correct copy of the offer letter and arbitration agreement that Lynch signed is attached hereto as **Exhibit A-1**.  Lynch's electronic signature appears on page 8 of 8 of **Exhibit A-1** with a unique signature ID showing that Lynch used his unique password to access and electronically sign the document.  The unique signature ID also appears in the header of the pages preceding the signature page, which shows that those pages were presented to him for review before he clicked the button entitled "Accept and eSign Offer."

8.      On August 28, 2017, Hartsfield electronically signed the offer letter and arbitration agreement presented to him through the Taleo system.  A true and correct copy of the offer letter and arbitration agreement that Hartsfield signed is attached hereto as **Exhibit A-2**.  Hartsfield's electronic signature appears on page 8 of 8 of **Exhibit A-2** with a unique signature ID showing that Hartsfield used his unique password to access and electronically sign the document.  The unique signature ID also appears in the header of the pages preceding the signature page, which

shows that those pages were presented to him for review before he clicked the button entitled "Accept and eSign Offer."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and executed on this __13__ day of July, 2022 in Reno, Nevada.


Benjamin Flesch

# Exhibit A-1



May 29, 2017

John Lynch
660 Jessamine Avenue E.
St. Paul, MN 55106


Dear John:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Maintenance Technician on the terms set forth below.  As Maintenance Technician, you will perform the duties customarily associated with this position.  You will report to Chris Guenther, 2.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be $23.00 per hour, subject to standard payroll deductions and withholdings.  As a non-exempt employee, you will be entitled to overtime.  You will be eligible for vacation and sick leave according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla.  Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.

Tesla offers a competitive benefits package described below:

> **Equity Grant:**  Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $9,500 in the form of Restricted Stock Units ("RSUs"), which will vest as described below.  This value is determined based on our standard equity granting policies, as further described below.  This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.
>
> Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.
>
> New Equity Awards will be visible in E*Trade approximately eight weeks from your hire

date. Grants are scheduled for approval for the second Monday of the month after you are hired. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Vacation Program:** Regular full-time employees and part-time employees who regularly work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

**Relocation Program:** You will also receive relocation assistance subject to our standard relocation program. Details of the program will be provided to you. If you voluntarily leave Tesla, Inc. within 24 months of your hire date, you agree to repay on your last day of employment the pro-rata amount of any fees for relocation assistance that we provided to you.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by *final, binding and confidential arbitration* in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related

Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be June 26, 2017. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to June 19, 2017 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____          Date: _____

Start Date:     June 26, 2017

Accepted offer | John Lynch | Esign ID: NLHE3HOOIN9-825331VFN | Esigned Date: 6/16/17 | Page: 5 of 8

## NOTICE TO EMPLOYEE
### *Labor Code section 2810.5*

### EMPLOYEE

Employee Name: John Lynch

Start Date: June 26, 2017

### EMPLOYER

Legal Name of Hiring Employer: Tesla, Inc.

Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?   ◻ Yes

x No

Physical Address of Hiring Employer's Main Office:

3500 Deer Creek Rd. Palo Alto, CA 94304

Hiring Employer's Telephone Number: 650-681-5100

### WAGE INFORMATION

Rate(s) of Pay: $23.00                    Overtime Rate(s) of Pay: 1.5x base pay rate or 2x base pay rate - see OT policy for more information

Rate by (check box):    x Hour    ◻ Shift    ◻ Day    ◻ Week    ◻ Salary    ◻ Piece rate    ◻ Commission

◻ Other (provide specifics):

Does a written agreement exist providing the rate(s) of pay?    (check box)    x Yes    ◻ No

If yes, are all rate(s) of pay and bases thereof contained in that written agreement?    x Yes    ◻ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage.  Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Every other Friday

### WORKERS' COMPENSATION

Insurance Carrier's Name: Zurich NA

Address: 1400 American Lane, Schaumburg, IL 60196

Telephone Number: 1.800.987.3373

Policy No.: MA: WC 0172150 00  All Other States WC 0172149 00

**ACKNOWLEDGMENT OF RECEIPT**

_____Tesla, Inc._____                    _____
(PRINT NAME of Employer representative)                    (PRINT NAME of Employee)

_____Tesla, Inc._____                    _____ (SIGNATURE
of Employer representative)                    (SIGNATURE of Employee)

_____                    _____
(Date)                                            (Date)

The employee's signature on this notice merely constitutes acknowledgment of receipt.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

Filling in the following information will constitute your eSignature and will have the same legal impact as signing a printed version of this document.

 Password Verified 

Name: *John Lynch*

Date: 6/16/17 (m/d/yy)

Signature ID: NLHF3HOOIN9-825331VFN



Exhibit A-2



August 28, 2017

Daxton Hartsfield
2466 Powdermill Hill Rd.
Lawrenceburg, TN 38464


Dear Daxton:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Quality Technician on the terms set forth below.  As Quality Technician, you will perform the duties customarily associated with this position.  You will report to Andre Gava, Associate Manager, Quality - Gigafactory.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be $26.00 per hour, subject to standard payroll deductions and withholdings.  As a non-exempt employee, you will be entitled to overtime.  You will be eligible for paid time off according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire.  Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla.  Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.

Tesla offers a competitive benefits package described below:

> **Equity Grant:**  Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $18,000 in the form of Restricted Stock Units ("RSUs"), which will vest as described below.  This value is determined based on our standard equity granting policies, as further described below.  This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.
>
> Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.
>
> New Equity Awards will be visible in E*Trade approximately eight weeks from your hire

date. Grants are scheduled for approval for the second Monday of the month after you are hired. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Paid Time Off ("PTO") Program:** Regular full-time employees and part-time employees who regularly work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

**Relocation Program:** You will also receive relocation assistance subject to our standard relocation program. Details of the program will be provided to you. If you voluntarily leave Tesla, Inc. within 24 months of your hire date, you agree to repay on your last day of employment the pro-rata amount of any fees for relocation assistance that we provided to you.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a.  Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

b.  The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

c.  The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

d.  The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

e.  Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

f.  Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related

Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be October 2, 2017. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to August 31, 2017 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____          Date: _____

Start Date:    October 2, 2017

# NOTICE TO EMPLOYEE
### *Labor Code section 2810.5*

## EMPLOYEE

Employee Name: Daxton Hartsfield

Start Date: October 2, 2017

## EMPLOYER

Legal Name of Hiring Employer: Tesla, Inc.

Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?  ☐ Yes

x No

Physical Address of Hiring Employer's Main Office:

3500 Deer Creek Rd. Palo Alto, CA 94304

Hiring Employer's Telephone Number: 650-681-5100

## WAGE INFORMATION

Rate(s) of Pay: $26.00                              Overtime Rate(s) of Pay: 1.5x base pay rate or 2x base pay rate - see OT policy for more information

Rate by (check box):    x Hour    ☐ Shift    ☐ Day    ☐ Week    ☐ Salary    ☐ Piece rate    ☐ Commission
☐ Other (provide specifics):

Does a written agreement exist providing the rate(s) of pay?    (check box)    x Yes      ☐ No

If yes, are all rate(s) of pay and bases thereof contained in that written agreement?      x Yes    ☐ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage.  Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Every other Friday

## WORKERS' COMPENSATION

Insurance Carrier's Name: Zurich NA

Address: 1400 American Lane, Schaumburg, IL 60196

Telephone Number: 1.800.987.3373

Policy No.: MA: WC 0172150 00  All Other States WC 0172149 00

**ACKNOWLEDGMENT OF RECEIPT**

_____Tesla, Inc._____          _____
(PRINT NAME of Employer representative)          (PRINT NAME of Employee)

_____Tesla, Inc._____          _____ (SIGNATURE
of Employer representative)          (SIGNATURE of Employee)

_____          _____
(Date)          (Date)

The employee's signature on this notice merely constitutes acknowledgment of receipt.

---

### Applicable to California Employees Only

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

**Paid Sick Leave Notice**

Unless exempt, the employee identified on this notice is entitled to minimum requirements for paid sick leave under state law which provides that an employee:

a. May accrue paid sick leave and may request and use up to 3 days or 24 hours of accrued paid sick leave per year;
b. May not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and
c. Has the right to file a complaint against an employer who retaliates or discriminates against an employee for 1. requesting or using accrued sick days; 2. attempting to exercise the right to use accrued paid sick days; 3. filing a complaint or alleging a violation of Article 1.5 section 245 et seq. of the California Labor Code; 4. cooperating in an investigation or prosecution of an alleged violation of this Article or opposing any policy or practice or act that is prohibited by Article 1.5 section 245 et seq. of the California Labor Code.

The following applies to the employee identified on this notice: accrues paid sick leave pursuant to the employer's policy which satisfies or exceeds the accrual, carryover, and use requirements of Labor Code §246.

Filling in the following information will constitute your eSignature and will have the same legal impact as signing a printed version of this document.

 Password Verified    

Name:          *Daxton Hartsfield*
Date:          8/28/17 (m/d/yy)
Signature ID:  QD0N3WEU5I9-904XOHXBO

Powered by