IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHN LYNCH, DAXTON HARTSFIELD, AND SHAWN SAKHIZADA, Individually and for Others similarly situated,<br><br>PLAINTIFFS,<br><br>V.<br><br>TESLA, INC.,<br><br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Case No. 1:22-cv-00597 |

**DEFENDANT'S RENEWED MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITRATION UNDER RULES 12(B)(1) AND 12(B)(3)**

The initial plaintiffs in this case, John Lynch and Daxton Hartsfield, both signed arbitration agreements containing class action waivers. In an ill-conceived attempt to side-step their binding arbitration agreements, and after Tesla moved to dismiss and compel their claims to individual arbitration, Lynch and Hartsfield amended their complaint to add a new named-plaintiff, Shawn Sakhizada. Sakhizada, however—like Lynch, Hartsfield, and all members of the proposed class— also signed a binding arbitration agreement with a class action waiver. As a result, the Court must dismiss Plaintiffs' claims and compel them to individual arbitration.

Despite these uncontested facts, Plaintiffs ask the Court to issue an unprecedented protective order affecting the rights of absent alleged class members before compelling individual arbitration. This request is not only meritless, it is based on a very serious misrepresentation of material fact. Lynch asserts in a sworn declaration under penalty of perjury that "[o]n June 26, 2022, I received an e-mail from Tesla requesting that I sign a separation agreement." Doc. No. 7-2, ¶ 6. Attached, however, is a copy of the history of the subject separation agreement showing that Tesla e-mailed it to Lynch on June 11, 2022—**eight days before** he filed this lawsuit. *See* Exhibit A at ¶ 15; Exhibit A-4 at p. 10 ("Your Separation Agreement History"). Lynch's sworn testimony and the repeated accusations of wrongdoing by Tesla are false. *See e.g.,* Doc. No. 7,

FN ("Egregiously, Tesla even sought to obtain a full release from named plaintiff John Lynch since this case was filed, despite the fact that he is clearly represented by counsel and has initiated this class action.").[1]

Through its forthcoming Motion to File Sur-Reply to Plaintiffs' Motion for Emergency Protective Order, Tesla will address Lynch's misrepresentation to the Court and the fact that Plaintiffs have now improperly pivoted for the first time in their reply from seeking a protective order under Rule 23(d) to seeking a legally distinct injunction to preserve the "status quo"—while at the same time failing to set forth or prove any elements required to attain the requested injunction. The fact remains, however, that the Court need not even address Plaintiffs' unfounded and unsupported request for class-wide injunctive relief and should instead deny it as moot after properly compelling Plaintiffs' claims to individual arbitration as required by the subject arbitration provision and all applicable law.

## I.   BACKGROUND

For at least the past 15 years, Tesla has entered into mutual binding arbitration agreements with all of its employees. *See* Exhibit A (Decl. of Benjamin Flesch) at ¶ 3. Plaintiffs are no exception. On May 29, 2017, Tesla sent Lynch an offer for a Maintenance Technician position that contains an arbitration provision. *See* Exhibit A-1. On August 28, 2017, Tesla sent Hartsfield a similar offer letter for a Quality Technician position that contains an identical arbitration

---

[1] Consistent with Plaintiffs' questionable conduct, they also sought to deprive Tesla of nearly half of its time to respond to their Amended Complaint by serving it through first class mail six days before filing it. Plaintiffs' counsel dropped the Amended Complaint in the mail in Boston at some point on Wednesday June 20, 2022. *See* Exhibit B (Certificate of Service). This ensured that it arrived at Tesla's counsel's offices in Texas on the afternoon of Monday, June 25, 2022. The only conceivable reason for Plaintiffs to serve the Amended Complaint through regular mail—even after Tesla had appeared in this case and consented to service through the Court's e-filing system—was to deprive Tesla of nearly half of its 14-day response deadline. The Court should not condone this type of conduct.

provision. *See* Exhibit A-2. On May 25, 2021, Tesla sent Sakhizada a similar offer letter for a Store Leader position that also contains an arbitration provision. *See* Exhibit A-3.

The arbitration provision in the offer letters is broad and provides that Plaintiffs and Tesla mutually agree that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [Plaintiffs'] employment, or the termination of ["Plaintiffs'] employment, will be resolved, to the fullest extent permissible, by ***final, binding and confidential arbitration*** . . . ." *See* Exhibit A-1–A-3 at p. 3 (emphasis in original). Tesla and Plaintiffs also mutually agreed to waive the right to bring or participate in a class action as the arbitration provision provides, "any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Id*.

Lynch electronically signed and accepted the offer letter and agreed to be bound by the arbitration provision on June 16, 2017.





*See* Exhibit A-1 at p. 8.

Hartsfield electronically signed and accepted the offer letter and agreed to be bound by the arbitration provision on August 28, 2017.



*See* Exhibit A-2 at p. 8.

Sakhizada electronically signed and accepted the offer letter and agreed to be bound by the arbitration provision on May 25, 2021



*See* Exhibit A-3 at p. 4.

As reflected in Lynch's and Hartsfield's electronic signatures, they received and signed the offer letters through the Taleo system. *See* Exhibit A at ¶¶ 5–8. Tesla used the Taleo system at the time Lynch and Hartsfield were hired to manage the application and onboarding process for its employees. *Id*. Lynch and Hartsfield, like all applicants at the time, created Taleo accounts using their first names, last names, personal e-mail addresses, and telephone numbers. *Id*. at ¶ 5. They then created their own unique usernames and passwords to access the Taleo system and upload their resumes and receive communications from Tesla, including their offer letters. *Id*. Hartsfield and Lynch also accepted and electronically signed their offer letters through the Taleo system by

4

clicking on a button entitled "Accept and eSign offer." *Id*. at ¶ 6. They were then required to enter their name, last name, email address, and unique, individually created passwords to further confirm their acceptance of their respective offer letters. *Id*. Once accepted, a unique signature ID was also affixed by the Taleo system to the header of every page of the offer letters, which shows that those pages were presented to Lynch and Hartsfield for review before they electronically signed and accepted the terms of the letters. *Id*. at ¶¶ 7–8.

In or about September 2018, Tesla transitioned to a new applicant tracking and onboarding system for its employees called Avature. *Id*. at ¶ 9. Avature contains secure firewalls to maintain software security and to ensure its safe use by prospective applicants. *Id.* at ¶ 10. Sakhizada created a profile in Avarture in order to apply for employment with Tesla and provided his name, e-mail address, home address, and resume. *Id.* at ¶ 11. All subsequent communications generated after this time, were directed by Avarture's secure system to the e-mail address Sakhizada provided. *Id.* at ¶ 10.

Tesla sent an email to Sakhizada containing a link to his employment offer letter, and Sakhizada accessed the offer letter link by logging into his personal email account and clicking on the secure link. *Id.* at ¶¶ 13–14. After clicking the secure link, he was presented with the offer letter and the ability to accept or decline the offer letter, which contained the agreement to arbitrate all claims arising out of his employment. *Id.* at ¶ 14. To accept the offer, Sakhizada had to go through a series of information fields, in which he had to create his own e-signature—which he could do by either typing his name or drawing his e-signature. *Id*. He then inputted his first and last name into the system and was required to click on a button entitled "Click to Sign." *Id*. Sakhizada electronically signed the offer letter containing the agreement to arbitrate on May 25, 2021. *Id*. at ¶ 15. A confirmation of his signature of the offer letter and arbitration agreement appeared in the Avature system, at which point the Avature system changed Sakhizada's workflow

5

status from "extend offer" to "offer accepted" and confirmed that he had signed the offer letter and accepted the offer. *Id.* at ¶ 16.

## II.  Standard of Review

The Fifth Circuit Court of Appeals has not definitively decided whether a pre-answer motion to compel arbitration should be brought under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) and Tesla, therefore, asserts this Motion under both rules. *See Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) ("We have held that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration.") (internal citations omitted); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F. 3d 898, 902 (5th Cir. 2005) (noting that "circuits are split on the issue of whether Rule 12(b)(1) or 12(b)(3) is the proper motion for seeking dismissal based on a forum selection or arbitration clause," but electing to analyze the subject motion to compel arbitration under Rule 12(b)(3) because "our court has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause . . . .").

Under Rule 12(b)(1), the burden "is on the party asserting jurisdiction" to "prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and the evidence." *Donahoe*, 751 F.3d at 303. Similarly, once venue is challenged under Rule 12(b)(3), "the burden is on the plaintiff to establish that the district he chose is a proper venue." *Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 589 (5th Cir. 2013). The Court can find that personal jurisdiction is lacking under Rule 12(b)(1), or that venue is improper under Rule 12(b)(3), based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012); *In re*

6

*FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

### III. ARGUMENT

**A. As Mandated by the Federal Arbitration Act Plaintiffs' Claims Should be Dismissed and Compelled to Arbitration under Either Rule 12(b)(1) or 12(b)(3).**

The Federal Arbitration Act ("FAA"), which governs the subject arbitration provision, provides that "pre-dispute arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[2] *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (quoting 9 U.S.C. § 2.). The FAA permits an aggrieved party to file a motion to dismiss and compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *See American Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (citing 9 U.S.C. § 4).

"Federal courts have supported a strong policy in favor of arbitration." *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 906 (5th Cir. 2005). Accordingly, "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing invalidity." *Carter*, 362 F.3d at 297. Further, "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration" and "individuals seeking to avoid the enforcement of an arbitration agreement face a high bar." *Id.*; *Moses H. Cone Mem. Hosp., v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

---

[2] The FAA applies to contracts "evidencing a transaction involving commerce" and "[t]he requirement that the underlying transaction involve commerce 'is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause.'" *See* 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp.*, 460 U.S. 1, 24, (1983). It is beyond dispute that the offer letters containing the arbitration agreements here and Plaintiffs employment with Tesla involve interstate commerce as, among other things, Tesla distributes products from its various locations through the normal channels of interstate commerce and Plaintiffs worked on products and used materials in the course of their employment that were both received from and shipped to states outside of the state in which they worked. *See* Exhibit C at ¶ 1.

7

Courts employ a two-step process in assessing a motion to compel arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009). At step one, the Court considers merely whether the plaintiff has agreed to arbitrate the dispute at issue. *Id*. at 233–34. This step requires the Court to ask only: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the agreement. *Webb v. Investascorp, Inc.*, 89 F.3d 252, 256-57 (5th Cir. 1996). Once the Court is satisfied that the parties agreed to arbitrate and that the dispute falls within the scope of the agreement, the second step is to determine whether any federal statute or policy renders the claims non-arbitrable, despite the strong presumption in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

As established below: (1) the arbitration provision to which Plaintiffs agreed to be bound is valid; (2) Plaintiffs' claims against Tesla fall within the scope of the arbitration provision; (3) no federal statute or policy renders the claims non-arbitrable; and (4) the Court should compel Plaintiffs' claims to individual arbitration because they each waived the right to bring or participate in a class action against Tesla and dismiss the lawsuit.

**1.    Plaintiffs Offer Letters Contain Valid and Enforceable Arbitration Provisions.**

Federal courts look to the state law of contract formation to determine whether a valid arbitration agreement exists. *See OPE Intern. LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–456 (5th Cir. 2001) (observing that "whether there is a valid agreement to arbitrate . . . is governed by ordinary state-law contract principles"). Here, Hartsfield's and Lynch's offer letters contain a California choice-of-law provision and Sakhizada's offer letter provides that it is governed by the law of the state in which he worked, which was California. *See* Exhibits A-1–A-3 at p. 4.

"Under California law, a contract is valid if there is mutual assent between the parties and valid consideration." *Totten v. Kellogg Brown & Root, LLC,* 152 F. Supp. 3d 1243, 1250 (C.D. Cal. 2016). California's Uniform Electronic Transaction Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form," and specifies that "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." Cal. Civ. Code § 1633.7(a)-(b); *see also Mikhak v. Univ. of Phoenix,* No. C16-00901 CRB, 2016 WL 3401763, at *6 (N.D. Cal. June 21, 2016) ("Electronic signatures and clicking 'Accept' are valid means of expressing assent to a contract.").

In this case, Plaintiffs "accepted" and "signed" their offer letters. *See* Exhibits A-1–A-3. Specifically, the executed offer letters evince that Plaintiffs utilized a unique signature ID to access and electronically sign the document. *See* Exhibit A at ¶¶ 5–14. Moreover, while Plaintiffs' electronic "acceptance" and "signature" of the offer letters cannot be seriously disputed, Plaintiffs also "implicitly accepted" the offer letters through continued employment with Tesla. *See Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 420, 100 Cal.Rptr.2d 818 (2000) ("This means that a party's acceptance of an agreement to arbitrate may be express...or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer.").

There is also ample consideration for the arbitration agreements. First, the parties mutually agreed to arbitrate. *See* Exhibit A-1–A-3 ("you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permissible, by ***final, binding and confidential arbitration*** . . . ."). An agreement to be mutually bound by arbitration is sufficient consideration. *See Cir. City Stores, Inc. v. Najd,* 294 F.3d 1104, 1108 (9th Cir. 2002) (a "promise to be bound by the arbitration process itself serves as adequate consideration"). And

9

second, it is undisputed that Plaintiffs worked for Tesla after accepting the offer letters, and continued employment constitutes sufficient consideration for an arbitration agreement. *See Asfaw v. Lowe's HIW, Inc.,* No. LA CV14-00697 JAK, 2014 WL 1928612, at *3 (C.D. Cal. May 13, 2014) ("However, it is undisputed that, in exchange for agreeing to arbitrate disputes, Plaintiff either accepted Defendant's offer of employment or continued working for Defendant [and] [c]ontinued employment constitutes consideration for an agreement to arbitrate.").

Finally, well-established case law precedent establishes the validity of the arbitration provision in question. At least three federal district courts (and several state courts, including in California) have held that Tesla offer letters containing substantively identical arbitration provisions to those at issue here were enforceable and have compelled arbitration pursuant to their terms. *See Hansen v. Tesla, Inc.,* No. 3:19-cv-00413, 2020 WL 4004800 *1, *3 (D. Nev. July 15, 2020); *Williams v. Tesla, Inc.,* No. CV 18-4120, 2018 WL 6499867, at *1, *3 (D.N.J. Dec. 11, 2018); *Hidalgo v. Tesla Motors, Inc,* No. 5:15-CV-05185, 2016 WL 3541198, at *1, *5 (N.D. Cal. June 29, 2016).

### 2. The Arbitration Provision Covers Plaintiffs' Claims.

Plaintiffs' claims under the federal Workers Adjustment and Retraining Notification ("WARN") Act and the state California WARN Act are covered by the subject arbitration provision. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Jha v. Asurgen Inc.,* No. 1:19-CV-1070-RP, 2020 WL 7029157, at *4 (W.D. Tex. Nov. 30, 2020) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986)). Here, there can be no dispute that the subject arbitration provision covers Plaintiffs' claims as it applies to all disputes, claims, or causes of action "arising from or relating to [Plaintiffs'] employment, or the termination of

[Plaintiffs'] employment," and Plaintiffs' claims arise from and relate directly to Tesla's termination of their employment in alleged violation of the WARN Act and the Cal-WARN Act.

### 3. No Federal Statute or Policy Renders Plaintiffs' Claims Non-Arbitrable.

There is no federal statute or policy that renders Plaintiffs' individual WARN Act and Cal-WARN Act claims non-arbitrable, and courts routinely compel such claims to arbitration. *See e.g.*, *Garrett v. Hooters of Am., LLC*, No.4:21-cv-154, 2022 WL 347619, at *1 (S.D. Tex. Jan. 05, 2022), report and recommendation adopted, 4:21-cv-154, 2022 WL 345648, at *1 (S.D. Tex. Feb. 3, 2022) (compelling plaintiffs' federal WARN Act claims to individual arbitration); *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *1-2 (9th Cir. Aug. 19, 2021) (mem. op.) (affirming district court's order compelling individual arbitration of federal and Cal-WARN Act claims); *Naler v. Schneider Nat'l. Carriers, Inc.*, No. 21-cv-1019, 2021 WL 8269177, at *2 (C.D. Cal. Nov. 5, 2021) (citing *Romero* while observing that the subject class action waivers and individual arbitration agreements did not violate any fundamental policy of California).

### B. The Court Should Compel Individual Arbitration and Dismiss this Case.

The availability of class proceedings under the arbitration provision presents a gateway issue that is presumptively for the Court to decide. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) (It is "presume[d] that parties have *not* authorized arbitrators to resolve certain 'gateway' questions, such as 'whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'"). In making this decision it is important to note as a threshold matter that the "FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion.'" *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

There can be no dispute here that Plaintiffs' claims must be compelled to individual arbitration because Plaintiffs and Tesla mutually agreed that "any claim, dispute, or cause of action must be brought in a party's in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Exhibits A-1–A-3. This waiver is enforceable as "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so" and there is clearly no such agreement here. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010) (emphasis in original); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1974 (9th Cir. 2014) (finding that an agreement waiving class action arbitration was enforceable as to claims brought under California state law); *Romero*, 2021 WL 3675074, at *1-2 (affirming the district court's motion to compel individual arbitration holding that such an agreement did not violate the fundamental policy of California).

After compelling individual arbitration, the Court should dismiss this lawsuit. "The weight of authority supports dismissal of the case" as opposed to staying the action pending arbitration where, as here, "all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992). This is so because "retaining jurisdiction and staying the action will serve no purpose." *Id*.

## IV.    CONCLUSION

Plaintiffs should be compelled to abide by the agreements into which they each entered. And, Plaintiffs post-termination litigation shenanigans should be rejected and not rewarded. For the foregoing reasons, Tesla asks the Court to dismiss Plaintiffs' individual and class action claims under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) and compel Plaintiffs' to individual arbitration.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ T. Cullen Wallace*
Robert E. Sheeder
Texas Bar No. 18174300
robert.sheeder@morganlewis.com
Clayton M. Davis
Texas Bar No. 24092323
clayton.davis@morganlewis.com
1717 Main Street, Suite 3200
Dallas, Texas 75201
Telephone: (214) 466-4000
Facsimile: (214) 466-4001

T. Cullen Wallace
Texas Bar No. 24072412
cullen.wallace@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX  77002
Telephone:  713.890.5000
Facsimile:  713.890.5001

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August 2022, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ T. Cullen Wallace*
T. Cullen Wallace