# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN LYNCH, DAXTON HARTSFIELD, AND SHAWN SAKHIZADA, Individually and for Others similarly situated, | § § § § | |
| PLAINTIFFS, | § § | CASE NO. 1:22-CV-00597 |
| v. | § § | |
| TESLA, INC., | § § | |
| DEFENDANT. | § § | |

**DECLARATION OF BENJAMIN FLESCH**

I, Benjamin Flesch, hereby declare and state:

I am currently employed by Tesla, Inc. ("Tesla") as a Senior Analyst, Recruiting. In connection with my position at Tesla, I am familiar with Tesla's employment policies and practices, as well as its hiring procedures. I have personal knowledge of the facts set forth in this declaration, except in instances stated on information and belief. If called to testify as a witness, I could and would competently testify thereto.

1.      Tesla is an automotive company with a mission to transition the world to sustainable energy through designing, manufacturing, and selling electric cars and solar products throughout the United States and the world. Tesla's products are distributed from its various locations in the United States through the normal channels of interstate commerce. The employees of Tesla's facilities, including Plaintiffs John Lynch ("Lynch"), Daxton Hartsfield ("Hartsfield"), and Shawn Sakhizada ("Sakhizada"), also work on products and use materials in the course of their employment that are both received from and shipped to states outside the state in which they work, thereby involving interstate commerce.

2. In the course and scope of my duties, I oversee Tesla's electronic applicant tracking and onboarding process and the associated technology systems, and I have access to Tesla's employee records, which include accepted offer letters. Tesla regularly maintains these documents in the ordinary course of business. I am also familiar with Tesla's hiring procedures and its employment policies and practices.

3. I am familiar with Tesla's current and past practice of providing new employees arbitration agreements. For at least the past fifteen years, Tesla has required all of its employees to sign arbitration agreements at the outset of their employment, including Lynch, Hartsfield, and Sakhizada.

4. I have reviewed Tesla's personnel profiles, including the accepted offer letters, related to Lynch and Hartsfield, both of whom were hired in 2017. At the time Lynch and Hartsfield were hired, Tesla used a system called Taleo to manage the application and onboarding process. I am familiar with Tesla's use of Taleo to track applicants for employment, issue offer letters, and store accepted offer letters, as well as the various authentication and security parameters utilized by the Taleo system.

5. At the time of Lynch's and Hartsfield's hire, applicants were required to create a Taleo account using their first name, last name, personal email address, and personal telephone number. Applicants were also required to create a username and password. If Tesla chose to extend an offer of employment to an applicant who completed the application process, Tesla sent an email to the applicant through the Taleo system using the personal email address that the applicant provided during the application process. The email from Tesla contained a link to the employment offer letter. It was Tesla's policy that all offer letters Tesla sent through the Taleo system contain arbitration agreements.

6.     To open an offer letter and arbitration agreement, an applicant was required to log into the Taleo account using the unique username and password the applicant created during the application process.  After logging in, applicants were presented with the offer letter containing the arbitration agreement with the ability to accept or decline.  To accept the offer of employment pursuant to the offer letter and arbitration agreement, the applicant was required to click on a button entitled "Accept and eSign Offer."  The applicant was then prompted to re-enter his or her first name, last name, email address, and unique password, which further indicated an intention to accept the offer of employment pursuant to the offer letter and arbitration agreement.

7.     On June 16, 2017, Lynch electronically signed the offer letter and arbitration agreement presented to him through the Taleo system.  A true and correct copy of the offer letter and arbitration agreement that Lynch signed is attached hereto as **Exhibit A-1**.  Lynch's electronic signature appears on page 8 of 8 of **Exhibit A-1** with a unique signature ID showing that Lynch used his unique password to access and electronically sign the document.  The unique signature ID also appears in the header of the pages preceding the signature page, which shows that those pages were presented to him for review before he clicked the button entitled "Accept and eSign Offer."

8.     On August 28, 2017, Hartsfield electronically signed the offer letter and arbitration agreement presented to him through the Taleo system.  A true and correct copy of the offer letter and arbitration agreement that Hartsfield signed is attached hereto as **Exhibit A-2**.  Hartsfield's electronic signature appears on page 8 of 8 of **Exhibit A-2** with a unique signature ID showing that Hartsfield used his unique password to access and electronically sign the document.  The unique signature ID also appears in the header of the pages preceding the signature page, which

shows that those pages were presented to him for review before he clicked the button entitled "Accept and eSign Offer."

9.      In or about September 2018, Tesla transitioned to a new applicant tracking and onboarding system for its employees called Avature.  As part of my job duties, I helped design Avature.  I use the Avature system on a daily basis, and as the system expert, I assist with tracking candidate offer letters and applications executed through the system.

10.     Avature contains secure firewalls to maintain software security and to ensure its safe use by prospective applicants.  In order to apply for employment at Tesla, an applicant is requested to create a profile with his or her legal first name, last name, and email address.  Any communications generated thereafter, are directed by Avature's secure system to the email address used to create the applicant's profile.

11.     Sakhizada, like all other applicants since in or about September 2018, created a profile in Avature in order to apply for employment with Tesla and provided his name, e-mail address, home address, and resume.

12.     After an applicant completes the online application process, and Tesla chooses to extend an offer of employment to the applicant, the secure Avature system sends an email to the applicant using the email address the applicant provided during the online application process. The email from Tesla contains a link to the applicant's employment offer letter.  The Avature system contains security measures so that access to the link is restricted to the applicant, which ensures that other Tesla employees cannot access the applicant's offer letter, except for a small group of administrative employees for the purpose of troubleshooting any technical issues with the link.  No one from Tesla's Recruiting Operations, Human Resources, Legal, or any of the applicant's managers are able to access the link, even if they pull up the email sent to the applicant.

13.     Tesla sent Sakhizada an e-mail through the Avature system containing a link to his employment offer letter.  To access the secure link to the offer letter, Sakhizada had to log into his personal email account.  After clicking the secure link, he was presented with the offer letter and the ability to accept or decline the offer letter.  To accept the offer, Sakhizada had to go through a series of information fields, in which he had to create his own e-signature—which he could do by either typing his name or drawing his e-signature.  He would then need to input his first and last name into the system and would then be required to click on a button entitled "Click to Sign."  Sakhizada then had the opportunity to accept the offer by electronically signing the offer letter and would then have to validate his e-signature by providing his email address to confirm his acceptance and signing of the offer.

14.     Sakhizada electronically signed an offer letter on May 25, 2021, which contains the agreement to arbitrate.  A true and correct copy of the offer letter and arbitration agreement that Sakhizada electronically signed is attached at **Exhibit A-3**.  After Sakhizada electronically signed his offer letter, a confirmation of his signature appeared in the Avature system, at which point the Avature system changed his workflow status from "extend offer" to "offer accepted" and confirmed that he had signed the offer letter and accepted the offer.  If someone else from Tesla had accessed the document, this would appear in the system history.  The system history shows that no one else but Sakhizada accessed his offer letter.

15.     Tesla uses the Adobe Acrobat Sign e-signature service program to send and track separation agreements it sends to employees.  Attached at **Exhibit A-4** is a copy of the Separation Agreement Tesla sent to Lynch dated June 11, 2022, along with a page tilted "Your Separation Agreement."  The Your Separation Agreement page shows the date on which Tesla created and e-mailed the Separation Agreement to Lynch's personal e-mail address.  Based on the Adobe

Acrobat Sign tracking software, Lynch's Separation Agreement was created on June 11, 2022 and

e-mailed to Lynch on June 11, 2022 at 8:49:01 PM GMT.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct, and executed on this 2nd day of August, 2022.

_____

Benjamin Flesch

# EXHIBIT A-1



May 29, 2017

John Lynch
660 Jessamine Avenue E.
St. Paul, MN 55106


Dear John:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Maintenance Technician on the terms set forth below.  As Maintenance Technician, you will perform the duties customarily associated with this position.  You will report to Chris Guenther, 2.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be $23.00 per hour, subject to standard payroll deductions and withholdings.  As a non-exempt employee, you will be entitled to overtime.  You will be eligible for vacation and sick leave according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire.  Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla.  Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.

Tesla offers a competitive benefits package described below:

> **Equity Grant:**  Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $9,500 in the form of Restricted Stock Units ("RSUs"), which will vest as described below.  This value is determined based on our standard equity granting policies, as further described below.  This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.
>
> Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.
>
> New Equity Awards will be visible in E*Trade approximately eight weeks from your hire

date. Grants are scheduled for approval for the second Monday of the month after you are hired. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Vacation Program:** Regular full-time employees and part-time employees who regularly work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

**Relocation Program:** You will also receive relocation assistance subject to our standard relocation program. Details of the program will be provided to you. If you voluntarily leave Tesla, Inc. within 24 months of your hire date, you agree to repay on your last day of employment the pro-rata amount of any fees for relocation assistance that we provided to you.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by **_final, binding and confidential arbitration_** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related

Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be June 26, 2017. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to June 19, 2017 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____          Date: _____

Start Date:    June 26, 2017

Accepted offer | John Lynch | Esign ID: NLHE3HOOIN9-825331VEN | Esigned Date: 6/16/17 | Page: 5 of 8

# NOTICE TO EMPLOYEE
### *Labor Code section 2810.5*

### EMPLOYEE

Employee Name: John Lynch

Start Date: June 26, 2017

### EMPLOYER

Legal Name of Hiring Employer: <u>Tesla, Inc.</u>

Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?   □ Yes

x No

Physical Address of Hiring Employer's Main Office:

 <u>3500 Deer Creek Rd. Palo Alto, CA 94304</u>

Hiring Employer's Telephone Number: <u>650-681-5100</u>

### WAGE INFORMATION

Rate(s) of Pay: $23.00                                Overtime Rate(s) of Pay: <u>1.5x base pay rate or 2x </u>

<u>base pay rate - see OT policy for more information</u>

Rate by (check box):     x Hour     □ Shift     □ Day     □ Week     □ Salary     □ Piece rate     □ Commission

□ Other (provide specifics): _____

Does a written agreement exist providing the rate(s) of pay?     (check box)     x Yes     □ No

    If yes, are all rate(s) of pay and bases thereof contained in that written agreement?     x Yes     □ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

_____

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage.  Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: <u>Every other Friday </u>

### WORKERS' COMPENSATION

Insurance Carrier's Name: <u>Zurich NA</u>

Address: <u>1400 American Lane, Schaumburg, IL 60196</u>

Telephone Number: <u>1.800.987.3373</u>

Policy No.: MA: <u>WC 0172150 00</u>  All Other States <u>WC 0172149 00</u>

| **ACKNOWLEDGMENT OF RECEIPT** |
|:---:|

_____Tesla, Inc._____      _____
(PRINT NAME of Employer representative)      (PRINT NAME of Employee)

_____Tesla, Inc._____      _____ (SIGNATURE
of Employer representative)      (SIGNATURE of Employee)

_____      _____
(Date)      (Date)

The employee's signature on this notice merely constitutes acknowledgment of receipt.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

Filling in the following information will constitute your eSignature and will have the same legal impact as signing a printed version of this document.

 Password Verified    

Name:    *John Lynch*
Date:    6/16/17 (m/d/yy)
Signature ID:   NLHF3HOOIN9-825331VFN



# EXHIBIT A-2



August 28, 2017

Daxton Hartsfield
2466 Powdermill Hill Rd.
Lawrenceburg, TN 38464

Dear Daxton:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Quality Technician on the terms set forth below.  As Quality Technician, you will perform the duties customarily associated with this position.  You will report to Andre Gava, Associate Manager, Quality - Gigafactory.  Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be $26.00 per hour, subject to standard payroll deductions and withholdings.  As a non-exempt employee, you will be entitled to overtime.  You will be eligible for paid time off according to Tesla's standard policy.  Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire.  Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla.  Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.

Tesla offers a competitive benefits package described below:

**Equity Grant:**  Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $18,000 in the form of Restricted Stock Units ("RSUs"), which will vest as described below.  This value is determined based on our standard equity granting policies, as further described below.  This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement.  No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

New Equity Awards will be visible in E*Trade approximately eight weeks from your hire

date. Grants are scheduled for approval for the second Monday of the month after you are hired. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Paid Time Off ("PTO") Program:** Regular full-time employees and part-time employees who regularly work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

**Relocation Program:** You will also receive relocation assistance subject to our standard relocation program. Details of the program will be provided to you. If you voluntarily leave Tesla, Inc. within 24 months of your hire date, you agree to repay on your last day of employment the pro-rata amount of any fees for relocation assistance that we provided to you.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by *__final, binding and confidential arbitration__* in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related

Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be October 2, 2017. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to August 31, 2017 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____     Date: _____

Start Date:    October 2, 2017

Accepted offer | Daxton Hartsfield | Esign ID: QD0N3WEU5I9-904XQHXBO | Esigned Date: 8/28/17 | Page 5 of 8

# NOTICE TO EMPLOYEE
### *Labor Code section 2810.5*

## EMPLOYEE

Employee Name: Daxton Hartsfield

Start Date: October 2, 2017

## EMPLOYER

Legal Name of Hiring Employer: Tesla, Inc.

Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?   ☐ Yes

x No

Physical Address of Hiring Employer's Main Office:

3500 Deer Creek Rd. Palo Alto, CA 94304

Hiring Employer's Telephone Number: 650-681-5100

## WAGE INFORMATION

Rate(s) of Pay: $26.00                              Overtime Rate(s) of Pay: 1.5x base pay rate or 2x base pay rate - see OT policy for more information

Rate by (check box):   x Hour   ☐ Shift   ☐ Day   ☐ Week   ☐ Salary   ☐ Piece rate   ☐ Commission

☐ Other (provide specifics): _____

Does a written agreement exist providing the rate(s) of pay?   (check box)   x Yes   ☐ No

If yes, are all rate(s) of pay and bases thereof contained in that written agreement?   x Yes   ☐ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

_____

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage.  Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Every other Friday _____

## WORKERS' COMPENSATION

Insurance Carrier's Name: Zurich NA

Address: 1400 American Lane, Schaumburg, IL 60196

Telephone Number: 1.800.987.3373

Policy No.: MA: WC 0172150 00  All Other States WC 0172149 00

**ACKNOWLEDGMENT OF RECEIPT**

_____Tesla, Inc._____                    _____
(PRINT NAME of Employer representative)                (PRINT NAME of Employee)

_____Tesla, Inc._____                    _____ (SIGNATURE
of Employer representative)                   (SIGNATURE of Employee)

_____            _____
(Date)                                       (Date)

The employee's signature on this notice merely constitutes acknowledgment of receipt.

-

### Applicable to California Employees Only

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

**Paid Sick Leave Notice**

Unless exempt, the employee identified on this notice is entitled to minimum requirements for paid sick leave under state law which provides that an employee:

a. May accrue paid sick leave and may request and use up to 3 days or 24 hours of accrued paid sick leave per year;
b. May not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and
c. Has the right to file a complaint against an employer who retaliates or discriminates against an employee for 1. requesting or using accrued sick days; 2. attempting to exercise the right to use accrued paid sick days; 3. filing a complaint or alleging a violation of Article 1.5 section 245 et seq. of the California Labor Code; 4. cooperating in an investigation or prosecution of an alleged violation of this Article or opposing any policy or practice or act that is prohibited by Article 1.5 section 245 et seq. of the California Labor Code.

The following applies to the employee identified on this notice: accrues paid sick leave pursuant to the employer's policy which satisfies or exceeds the accrual, carryover, and use requirements of Labor Code §246.

Filling in the following information will constitute your eSignature and will have the same legal impact as signing a printed version of this document.

 Password Verified 

Name: *Daxton Hartsfield*
Date: 8/28/17 (m/d/yy)
Signature ID: QD0N3WEU5I9-904XOHXBO



# EXHIBIT A-3



05/ 25/ 2021

Shawn Sakhizada
3883 Turqouise Way
Oakland, California 94609
United States of America

Dear Shawn:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the exempt, salaried position of Store Leader on the terms set forth below. As a Store Leader, you will perform the duties customarily associated with this position. You will report to Izabela Miric. Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your annualized salary will be US Dollar $107,000.00 per year, subject to standard payroll deductions and withholdings. As an exempt employee, you will not be entitled to overtime. You will be eligible for paid time off according to Tesla's standard policy. Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time to time, without advance notice, as it deems necessary.

Your annual target incentive is 25% of your base pay, subject to standard deductions and authorized withholdings. Incentive payments are not guaranteed and are only deemed earned pursuant to the terms of the Sales Compensation Plan, which will apply in all instances.

Tesla offers a competitive benefits package described below:

Equity Grant: Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $ 200,000.00 in the form of Restricted Stock Units ("RSUs"), which will vest as described below. This value is determined based on our standard equity granting policies, as further described below. This award shall be subject to the terms and conditions of Tesla's 2019 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

New Equity Awards will be visible in E*Trade approximately eight weeks from your hire date. Grants are generally scheduled for approval on the 19th day of the month following your hire date. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your

signing the appropriate Award Agreement through the E*Trade portal.

401K Program: You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

Flexible Time Off Program: To provide an opportunity to take time off from time to time, Tesla has adopted a flexible time off policy for U.S. exempt (salaried) employees. Instead of having a formal limit on the number of PTO days, or waiting to accrue vacation time, you will just schedule the time off with your manager.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla proprietary information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action between the partiesmust be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and
b. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law; and
c. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and
d. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and
e. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

f. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

g. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims. If one or more of the provisions in this arbitration agreement, or any portion thereof, are deemed invalid, unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, processes, systems, or proprietary data belonging to the Company or relating to the Company's affairs, which derive value from its non-public status (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 06/ 14/ 2021.  This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the state in which you work.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

Employment at Tesla is conditioned upon, and thus subject to, pre-employment screenings for employment verification, background, and reference checks. Candidates for safety-sensitive positions and for work on certain projects, as well as employees working in those positions, are also subject to pre-employment drug and alcohol screening, and random and other (such as reasonable suspicion and/or post-accident) drug and alcohol screening during the course of employment at

the Company. Certain positions may also require successful completion of a pre-employment physical examination, which is designed solely to determine your physical ability to safely perform the essential functions of the job with or without reasonable accommodation. The Company reserves the right to periodically conduct background checks throughout any employee's tenure in accordance with the Fair Credit Reporting Act and applicable federal, state and local laws, consistent with business need. Your employment, therefore, is contingent upon a clearance of a background investigation, reference check, drug screen and/or physical examination, as applicable. In limited cases due to business necessity, the Company may permit a candidate to start work, contingent upon the successful completion or results of a background check and/or reference check (aka "contingent start"), in which case the individual's employment may be subject to termination if the Company receives negative information or results in connection with a background check or reference check, even where employment has conditionally begun pending the background or reference check results.

By accepting this offer, you further acknowledge and agree that Tesla may implement certain industry physical security practices such as access controls, surveillance, metal detection/screening, biometric security measures, or other security standards. If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 06/ 01/ 2021 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,

Tesla, Inc.

Elon Musk

Accepted by:

Signature: _____

Name:  Shawn Sakhizada

Date:  May 25, 2021

Start Date:       06/ 14/ 2021

Important Reminder about the I-9 Employment Verification Requirement

As explained in the Tesla offer letter, all offers of employment are contingent upon your ability to provide satisfactory proof of identity and work authorization for Form I-9, Employment Eligibility Verification. Federal law requires that Tesla have a valid Form I-9 on file for all employees.

To satisfy Form I-9 requirements, all employees must consult the USCIS List of Acceptable Documents and provide one document from List A OR one document from each List B and List C.  As a general matter, List B documents must contain a photograph because Tesla is an E-Verify employer. All documents must be original and unexpired in order to be accepted. The employee must complete Section 1 of the Form I-9 on or before the first day of work for pay.  Section 2 must be completed (with presentation of acceptable documents) within three business days of the first day of work for pay.  Note that Tesla cannot legally make any exceptions to this timeline.

For payroll purposes only, Tesla requests that all new hires bring their documents on the first day of work.  You will also have an opportunity to complete Form I-9 during New Hire Orientation.  Your Form I-9 must be completed within three days of hire. If you fail to present the appropriate documents within three days of hire, Tesla is required to immediately terminate your employment.

By signing this addendum, you are acknowledging that you understand the Form I-9 requirements, the timeline to present, as well as the consequences for failure to present.  If you suspect that you may have an issue presenting documents from the attached List of Acceptable Documents within the required period, we strongly encourage you to speak with your recruiter in advance of New Hire Orientation.

Note: If you are a foreign national who will be employed pursuant to a sponsored immigration status, you may not have the required documents at this time but should have such documents at the start of employment. Please contact immigration@tesla.com if you do not have your immigration status documents within a week of your scheduled start date.


Signature:  _____

Name:  Shawn Sakhizada

Date:  May 25, 2021

*Review the below and if you agree to the terms, select "I Agree" in Workday to indicate your acknowledgment. Note that selecting "I Agree" constitutes your e-signature, which has the same legal effect as your handwritten signature.*

## TESLA, INC. EMPLOYEE NON- DISCLOSURE AND INVENTIONS ASSIGNMENT AGREEMENT

In consideration of my employment or continued employment by **TESLA, INC.** (collectively with its divisions, subsidiaries and affiliates, the **"Company"**) and the compensation now and hereafter paid to me, I agree as follows:

### 1.   PROPRIETARY INFORMATION.

At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing. "**Proprietary Information**" shall mean all information, in whatever form and format, to which I have access by virtue of and in the course of my employment by the Company. Proprietary Information includes without limitation technical data, trade secrets, know-how, research and development, products, features, concepts, ideas, plans, designs, formulas, methods, processes, discoveries, improvements, source and object codes, data, programs, lists of or information relating to, suppliers, and customers, financial information and other business information, Inventions, and works of authorship. Notwithstanding the foregoing, Proprietary Information excludes any information that is or lawfully becomes part of the public domain. I agree that, in any dispute related to this Agreement, I will bear the burden of proving by clear and convincing evidence the applicability of this exclusion. This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

### 2.   ASSIGNMENT OF INVENTIONS.

2.1   **Proprietary Rights**. The term "**Proprietary Rights**" shall mean all trade secret, patent, copyright, mask work, and other intellectual property rights throughout the world, including any registrations of or applications to register such rights.

2.2   **Moral Rights.** The term "**Moral Rights**" shall mean any rights to claim authorship of or credit on any Company Inventions (defined below), to object to or prevent the modification or destruction of any Company Inventions, or to withdraw from circulation or control the publication or distribution of any Company Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

2.3   **Inventions**. The term "**Inventions**" shall mean any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audiovisual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation, or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked, or otherwise protected (including all versions, modifications, enhancements, improvements, and derivative works thereof).

2.4   **Prior Inventions**. I have set forth on **Exhibit A, PRIOR INVENTIONS DISCLOSURE**, to this Agreement a complete list of all inventions that I have, alone or jointly with others, conceived, developed, or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "**Prior Inventions**"). If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process, or machine, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use, copy, distribute, and sell such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

2.5   **California Employees Only - Labor Code Section 2870 Notice**. I have been notified and understand that the provisions of Section 2.6 of this Agreement do not apply to any Company Invention (defined below) that qualifies fully as a nonassignable invention under the provisions of Section 2870 of the California Labor Code, which states:

ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT

APPLY TO

AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE

EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DE- MONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

2.6     **Works for Hire; Assignment of Inventions**. I acknowledge and agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works for hire" under the U.S. Copyright Act and that the Company will be considered the author and owner of such works. I further agree to assign, and do hereby assign, to the Company all my right, title and interest in and to any and all Inventions that (i) are developed using equipment, supplies, facilities, trade secrets, or Proprietary Information of the Company, (ii) result from work performed by me for the Company, or (iii) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research and development of the Company (the "Company Inventions"). I agree to assign, and do hereby irrevocably transfer and assign, to the Company all Proprietary Rights and Moral Rights in or with respect to any Company Inventions. I forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Company Inventions, even after termination of my work on behalf of the Company.

2.7     **Obligation to Keep Company Informed**. During the period of my employment and for twelve (12) months after the termination of my employment with the Company, I will promptly and fully disclose in writing to the Company all Inventions authored, conceived, or reduced to practice by me, either alone or jointly with others, in connection with, derived from, or as a result of the work performed by me during my employment with the Company, or any Proprietary Information to which I had access during or as a result of my employment with the Company. In addition, I acknowledge and agree that all patent applications for such Inventions that are filed by me or on my behalf, whether during my employment or after termination of my employment, are subject to this Agreement and belong to the Company.

California Employees Only: I agree that at the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under Section 2870 of the California Labor Code and will provide to the Company in writing all evidence necessary to substantiate that belief.

2.8     **Notice to Third Parties**. During and after the term of my employment, the Company may, with or without prior notice to me, notify third parties of my agreements and obligations under this Agreement.

2.9     **Assistance**. I agree to assist in every proper way and to execute those documents and to take such acts as are reasonably requested by the Company to obtain, sustain, and from time to time enforce patents, copyrights, and other rights and protections relating to Company Inventions in the United States or any other country. I hereby irrevocably designate and appoint the Secretary of the Company as my attorney-in-fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this paragraph with the same legal force and effect as if executed by me. My obligations under this paragraph will continue beyond the termination of my employment with the Company for any reason, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance.

**3.     RECORDS.**

I agree to keep and maintain adequate and current written records of all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times. I will promptly disclose all such Inventions in writing to the Company and will supplement any such disclosures to the extent the Company may request. If I have any doubt as to whether or not to disclose an Invention to the Company, I will disclose it.

**4.**    **RETURN OF COMPANY RECORDS.**

Upon the termination of my employment for any reason, or at such earlier time as the Company may request, I shall immediately return to the Company all originals and copies of all hard copy and electronic documents, files and other property of the Company in my possession or control or to which I may have access, including all records referred to in Section 3 above, regardless of the storage medium (e.g., internal or external hard drives, solid-state drives, USB flash drives, flash memory cards, and cloud storage).

**5.**    **NO CONFLICTING OBLIGATIONS.**

I represent that my performance of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. Without limiting the foregoing, I agree that during my employment by the Company I will not improperly use or disclose any confidential information or trade secrets of any former employer or any other person to whom I have an obligation of confidentiality; I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person; and I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or otherwise in the public domain, or is otherwise provided or developed by the Company. I have not entered into and will not enter into any agreement or understanding, either written or oral, in conflict herewith.

**6.**    **LEGAL AND EQUITABLE REMEDIES.**

I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm and that the Company shall therefore have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

**7.**    **NOTICES.**

Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or, if sent by certified or registered mail, three (3) days after the date of mailing.

**8.**    **EMPLOYMENT.**

I understand and agree that nothing in this Agreement shall confer any right with respect to continuation of employment, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

**9.**    **NON-SOLICITATION.**

9.1    During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the Company's customers and suppliers and/or other confidential information related to them, including their buying and selling habits and special needs.

9.2    I acknowledge that the Company has invested, and will continue to invest, significant time and money to recruit and retain its employees. I recognize that in the course of my employment I have obtained or will obtain valuable information about the Company's employees and contractors, and their respective talents and areas of expertise.

9.2.1    I agree that during the term of my employment and for twelve (12) months thereafter, I will not directly or indirectly, for my own account or for others, solicit (or assist another in soliciting) for employment or for the performance of services any Company employee or contractor with whom I had contact or of whom I became aware during the period of my employment. Nor will I, for my account or for others, in any way induce or attempt to induce any such individual to terminate his or her employment by or performance of services for the Company.

9.2.2    During and after the termination of my employment with the Company, I will not directly or indirectly hire or otherwise take away any of the Company's employees (as an employee or an independent contractor) if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the

Company's employees and/or other confidential information related to them, including their skills, experience, current projects or assignments for the Company and specialized experience in Company technology and Inventions.

**10.     18 U.S.C. § 1833 NOTICE.**

I have been given notice of the immunity provided by 18 U.S.C. § 1833(b)(1), which provides:

*IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made-*

*(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.*

**11.     GENERAL PROVISIONS.**

11.1     This Agreement will be governed by and construed according to the laws of the county and state in which I am primarily assigned to work in by Company. I agree to submit to the jurisdiction of, and the exclusive jurisdiction over and venue for any action or proceeding arising out of or relating to this Agreement shall lie, in the state and federal courts located in the county and state in which you are primarily assigned to work in by Company.

11.2     If any provision of this Agreement is found to be excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed or reformed by limiting and reducing it to the extent required to render it enforceable under applicable law. If any provision of this Agreement is found to be invalid, illegal or unenforceable and cannot be construed so as to render it enforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Nothing in this Agreement is intended to restrict, or shall be interpreted as restricting, my right to engage in activity protected by Section 7 of the National Labor Relations Act or any other applicable state or federal law. Neither this Agreement nor the confidentiality provisions contained in any other existing employment related document between me and the Company shall be construed to prohibit or otherwise restrict me, as an employee of Company from lawfully reporting waste, fraud, or abuse to a designated investigative or law enforcement representative of a federal department or agency authorized to receive such information under any procurement contract.

11.3     The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. The Company may assign any of its rights or obligations under this Agreement.

11.4     No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

11.5     This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

11.6     Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective as of the first day of my employment with the Company.

Dated:   May 25, 2021

Signature: _____

Name:   Shawn Sakhizada

Address:   4392 Jessica Circle Fremont, CA 94555

**Exhibit A**

TO:     Tesla, Inc.

FROM:  Shawn Sakhizada

DATE:  May 25, 2021

SUBJECT: Prior Invention

1.      Except as listed in Section 2 below, the following is a complete list of all inventions or improvements that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

Additional sheets to attach:

YES ○                           NO ○

Additional documents should be emailed to HR@tesla.com on or before your start date

2.      Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

1.  Invention or Improvement:
    Party(ies):

    Relationship:

2.  Invention or Improvement:
    Party(ies):

    Relationship:

3.  Invention or Improvement:
    Party(ies):

    Relationship:

Additional sheets to attach:

YES ○                           NO ○

Additional documents should be emailed to HR@tesla.com on or before your start date

**\*\*\* WARNING -** If you sign (or eSign) this document and do **not** fill in anything in sections 1 or 2 on Exhibit A, we assume that you do not have any inventions.

# EXHIBIT A-4

June 11, 2022

John Lynch
johnlynch61@yahoo.com

Dear  John

This letter sets forth the substance of the separation agreement (the "Agreement") that Tesla, Inc. or one of its subsidiaries ("Tesla" or the "Company") is offering to aid you with your employment transition.

1.  **SEPARATION.**  The Company has terminated your employment. Your last day of active employment with Tesla will be June 10, 2022 (the "Exit Date").

2.  **SEVERANCE.** Although Tesla has no policy or procedure requiring payment of any severance benefits, Tesla will provide you with the following Severance Benefits, in exchange for the promises and representations you make in this Agreement, provided you sign this Agreement:

    (a).  Tesla will make a lump sum payment to you equivalent to one (1) week of your base compensation, which is equal to $ 1,791.35 , subject to applicable deductions and withholdings and less any sums owing to the Company.  You will receive this payment as soon as administratively possible, but no later than forty-five (45) calendar days following the later of the Severance Period (if applicable) or the Effective Date, as defined below.

    (b).  If you were enrolled in Tesla health care benefits as of your Exit date and you enroll in COBRA coverage and comply with the terms of this Agreement Tesla will cover the cost of your COBRA coverage for two months following the date that your active benefits coverage ends, through August 31, 2022. You will receive a COBRA enrollment packet in the mail within 10 business days of your Exit date which will include instructions on how to enroll in COBRA coverage through Tesla. If you do not actively elect coverage(s) within 60 days of your Exit date, you will lose your right to elect COBRA continuation coverage and you will not get the first two months of your COBRA coverage paid for by Tesla.

3.  **COBRA Coverage**. Subject to Section 2**,** and as provided by the federal COBRA law and by Tesla's current group health insurance policies, you will be eligible to continue your medical, dental, vision, and EAP benefits and, later, to convert to an individual policy. You will be provided with a separate notice of your COBRA rights. Your right to remain on COBRA will cease immediately if coverage is obtained with another employer group health plan that does not contain any exclusion or limitation with respect to any pre- existing condition.

4.  **IMMIGRATION.** If you are in H-1 or O-1 status, Tesla will provide economy transportation or equivalent amount for your individual return to your last place of foreign residence. Should you accept this offer, please contact immigration@tesla.com within sixty (60) calendar days of this notification.



5.  **UNEMPLOYMENT BENEFITS.** You may be eligible for unemployment benefits after your termination. The state agency makes the determination of unemployment compensation eligibility. More information is available on the state agency's website.

6.  **OTHER COMPENSATION AND BENEFITS.** You acknowledge that, except as expressly provided in this Agreement, and only if all pre-conditions for payment are satisfied, you will not receive nor are you entitled to receive any additional compensation, severance or benefits after the Exit Date. You recognize and agree that your employment relationship with Tesla is permanently and irrevocably severed and the Company has no obligation, contractual or otherwise, to hire, re-hire or re-employ you in the future.

7.  **WORKING CONDITIONS.** Tesla wants to make sure that if there were any problems with your compensation or if you had workplace safety concerns during your employment, that those concerns were properly addressed. If they were not and/or the representations set forth in the subsections (a)-(c) below are not true, please contact your Human Resources Business Partner ("HRBP") so that we may understand your concerns and take action as appropriate. Otherwise, by signing this Agreement, you acknowledge and represent that:

    (a).  other than the consideration set forth in this Agreement, the Company has paid or provided all salary, wages, bonuses, accrued vacation/paid time off, premiums, leaves, housing allowances, relocation costs, interest, severance, outplacement costs, fees, reimbursable expenses, commissions, stock, stock options, vesting, and any and all other benefits and compensation due to you;

    (b).  you have received any leave to which you were entitled or to which you requested, if any, under the Family Medical Leave Act or applicable state law, and that you did not sustain any workplace injury during your employment with Tesla that you have not already reported; and

    (c).  you have had the opportunity to raise any safety concerns, safety complaints, or whistleblower activities against the Company, and that if any safety concerns, safety complaints, or whistleblower activities were raised during your employment, they were addressed to your satisfaction.

8.  **EXPENSE REIMBURSEMENTS.** Within ten (10) calendar days of receipt of this Agreement, you will submit your final documented expense reimbursement statement reflecting any and all reasonable and necessary **business** expenses you incurred through during your employment for which you seek reimbursement. Tesla will reimburse you for such expenses pursuant to its regular business practice. Submit your completed manual expense reimbursement form to pcard-expense@tesla.com.

9.  **RETURN OF COMPANY PROPERTY.** If you have not already, you will return to Tesla all Company documents (and all copies thereof) and other Company property and materials in your possession, or your control, including, but not limited to, Company files, notes, memoranda, correspondence, lists, drawings, records, plans and forecasts, financial information, personnel information, customer and customer prospect information, sales and marketing information, product development and pricing information, specifications, computer-recorded information, tangible property, credit cards, entry cards, identification badges and keys; and any materials of any kind which contain or embody any proprietary or confidential material of the Company (and all reproductions thereof). You further agree



Tesla, Inc.
901 Page Avenue, Fremont, CA 94538

2

that in the event that you discover any other Company property in your possession after your Separation Date, you will immediately return such materials to the Company. Return of all Company property is a pre-requisite to your receiving payment under this Agreement.

**10. PROPRIETARY INFORMATION OBLIGATIONS.**

(a). You acknowledge and agree that: (i) in the course of your employment by Tesla, it was necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

(b). In recognition of the acknowledgment contained in this paragraph, subsection (a) above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for Tesla, its successors, and assigns; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; and (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information.

(c). You agree that all lists, materials, records, books, data, plans, files, reports, correspondence, and other documents ("Company material") used or prepared by, or made available to, you shall be and remain property of Tesla. You shall immediately return all Company material to the Company, and you shall not make or retain any copies or extracts thereof.

(d). You also agree and acknowledge that this paragraph and all subparts are material terms of this Agreement and that Tesla shall be entitled, as a matter of right, to disqualify you from severance under this Agreement, and/or to a temporary, preliminary, and/or permanent injunction and/or other injunctive relief, ex parte



Tesla, Inc.
901 Page Avenue, Fremont, CA 94538

3

or otherwise, from any court of competent jurisdiction, restraining any violation of this paragraph by you. Such injunctive relief shall be in addition to and in no way limit any and all other remedies the Company shall have in law and equity for the enforcement of such obligations. You hereby consent and stipulate that any violation of this Section would disqualify you from receiving severance under this Agreement, and further you consent and stipulate to the entry of such injunctive relief in such a court prohibiting you from any violation of the covenants and provisions of this paragraph.

(e). Nothing herein prevents you from reporting, in confidence, potential violations of law to relevant governmental authorities or to a court. Also, per federal law: (a) an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

11. **CONFIDENTIALITY.** The provisions of this Agreement will be held in strictest confidence by you and will not be publicized or disclosed in any manner whatsoever; provided, however, that: (a) you may disclose this Agreement to your immediate family; (b) you may disclose this Agreement to your attorney, accountant, auditor, tax preparer, and financial advisor, subject to such parties agreeing to maintain such information as confidential and to prevent disclosure of the information to all other third parties; and (c) you may disclose this Agreement insofar as such disclosure may be necessary to enforce its terms or as otherwise required by law. In particular, and without limitation, you agree not to disclose the terms of this Agreement to any current or former Company employee or contractor. Failure to comply with this provision shall be a material breach of this Agreement. You hereby agree that any violation of this Section would disqualify you from receiving severance under this Agreement.

12. **COOPERATION.** You agree to cooperate with Tesla in the transition of your duties and to provide information to and assist the Company in the investigation, defense, or prosecution of any suspected claim against or by the Company. Such assistance shall include, but is not limited to, participating in interviews with representatives of Tesla, attending, as a witness, depositions, trials, or other similar proceedings without requiring a subpoena, and producing and/or providing any documents or names of other persons with relevant information.

13. **NONDISPARAGEMENT.** Except to the extent allowed under the Protected Activity Not Prohibited provision set forth below, you agree not to disparage Tesla, the Company's products, or the Company's officers, directors, employees, shareholders and agents, affiliates and subsidiaries, predecessors in interest, in any manner likely to be harmful to them or their business, business reputation or personal reputation; provided that you will respond accurately and fully to any question, inquiry or request for information when required by legal process. Failure to comply with this provision shall be a material breach of this Agreement.

14. **PROTECTED ACTIVITY NOT PROHIBITED.** You understand that nothing in this Agreement or in any other agreement signed by you, including the Company's Proprietary Information and Inventions Agreement, shall in any way limit or prohibit you from engaging for a lawful purpose in any Protected Activity.  For purposes of this Agreement, "Protected Activity" shall mean filing a charge or complaint, or otherwise communicating, cooperating, or participating with, any state, federal, or other



Tesla, Inc.
901 Page Avenue, Fremont, CA 94538

4

governmental agency, including the Securities and Exchange Commission ("SEC"), the Equal Employment Opportunity Commission, and the National Labor Relations Board. Notwithstanding any restrictions set forth in this Agreement, you understand that you are not required to obtain authorization from the Company prior to disclosing information to, or communicating with, such agencies, nor are you obligated to advise the Company as to any such disclosures or communications. However, you understand that you are waiving any right to recover money in connection with any agency charge or agency or judicial decision, including class or collective action rulings, other than bounty money properly awarded by the SEC. Notwithstanding, in making any such disclosures or communications, you agree to take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Company confidential information to any parties other than the relevant government agencies. You recognize that nothing herein prevents you from reporting, in confidence, potential violations of law to relevant governmental authorities or to a court. You further understand that "Protected Activity" does not include the disclosure of any Company attorney-client privileged communications, and that any such disclosure without the Company's written consent shall constitute a material breach of this Agreement.

15. **EMPLOYMENT VERIFICATION.** All inquiries regarding your employment with Tesla should be directed to Verifyfast, 1 (877) 400-4397. Inquiries may also be referred to Verifyfast's website, www.verifyfast.com. Please use Tesla company code 4150.

16. **NONSOLICITATION.** You further agree that during the one-year period after the Exit Date, you shall not directly or indirectly solicit any individual who is or was a Tesla employee during the one-year period prior to the Exit Date, to work for any individual, partnership, limited liability company, corporation, or any other entity that is in competition with Tesla.

17. **NO ADMISSION.** You understand and agree that the promises and payments in consideration of this Agreement shall not be construed to be an admission or any liability or obligation by Tesla to you or to any other person, and that the Company makes no such admission.

18. **RELEASE OF CLAIMS.** In consideration for the payments and other promises and undertakings contained in this Agreement to which you would not otherwise be entitled, and except as otherwise set forth in this Agreement, you release, acquit and forever discharge Tesla, its parents and subsidiaries, and its and their respective officers, directors, agents, servants, employees, attorneys, shareholders, successors, assigns and affiliates (together "Releasees" or " the Company"), of and from any and all claims, liabilities, demands, charges, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, which you assert or could assert against the Company at common law or under any statute, rule, regulation, order or law, whether federal, state or local, on any ground whatsoever, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the date you sign this Agreement, including but not limited to: all such claims and demands directly or indirectly arising out of or in any way connected with your employment with the Company or the termination of that employment; claims or demands related to salary, bonuses, commissions, stock, stock options, or any other ownership interests in the Company, vacation or other time off pay, fringe benefits, expense reimbursements, severance pay, or any other form of compensation; any and all causes of action, including but not limited to actions for breach of contract, express or implied, breach of the covenant of good faith and fair dealing, express or implied, wrongful termination in violation of public policy, all other claims for wrongful termination and constructive discharge, and all other tort claims,



including, but not limited to, intentional or negligent infliction of emotional distress, invasion of privacy, negligence, negligent investigation, negligent hiring, supervision or retention, assault and battery, false imprisonment, defamation, intentional or negligent misrepresentation, fraud, and any and all claims arising under any federal, state or local law or statute, including, but not limited to Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Rehabilitation Act of 1973; the Equal Pay Act; the Employee Retirement Income Security Act of 1974; the Worker Adjustment and Retraining Notification Act; the Americans with Disabilities Act, 42 U.S.C. § 1981; the Family and Medical Leave Act; the Fair Labor Standards Act; the Sarbanes-Oxley Act of 2022; the Uniformed Services Employment and Reemployment Rights Act; any federal, state, and/or municipal statue, law, amendment, directive, order, and/or regulation enacted in response to the COVID-19 pandemic; **Massachusetts Employees**: Mass. Gen. Laws ch. 149, § 148 - the Massachusetts Wage Act; the Massachusetts Fair Employment Practices Act, the Massachusetts Overtime Law, the Massachusetts Payment of Wages Law; **New Jersey Employees**: the Conscientious Employee Protection Act and the New Jersey Law Against Discrimination; **Minnesota Employees**: the Minnesota Human Rights Act, the Minnesota Equal Pay for Equal Work Law, Minnesota Nonwork Activities Law, Minnesota Whistleblower Protection Law, Minnesota Parenting Leave Act, Minnesota Wage  Law, Minnesota WARN Laws, Minnesota Personnel Record Access Laws, the retaliation provision of Minnesota Workers' Compensation Act; and for all employees in all locations, any amendments to the foregoing, and any and all other laws and regulations relating to employment termination, employment discrimination, harassment or retaliation, claims for wages, hours, benefits, compensation, and any and all claims for attorneys' fees and costs, inasmuch as is permissible by law and by the respective governmental enforcement agencies for the above-listed laws.

You hereby represent that you do not have any pending judicial or administrative lawsuits, claims, or actions pending in your name or on behalf of any other person or entity against Tesla or any other person or entity subject to the release granted in this paragraph.  You affirm and represent to the Company that you have complied with all Company policies and procedures during your employment. If the Company discovers or learns that you did not comply with all Company policies and procedures during your employment, then Company may seek all remedies available under the law and equity including but not limited to delay or withholding of the severance payment, or seek or force the return or repayment by you of the severance payment, regardless of when discovered.

19. **RELEASE OF UNKNOWN CLAIMS.** You acknowledge that you hereby release all known and unknown claims including claims which you do not know or suspect to exist in your favor at the time of executing the release, which if known by you may or must have materially affected your rights. Therefore, you hereby knowingly, intentionally, and expressly waive and relinquish all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to your release of any unknown or unsuspected claims you may have against Tesla.

20. **RIGHTS AND CLAIMS EXCLUDED FROM WAIVERS AND RELEASES.** Nothing in this Agreement is intended to waive claims (a) for unemployment or workers' compensation benefits, (b) for vested rights under ERISA-covered employee benefit plans as applicable on the date you sign this Agreement, (c) that may arise after you sign this Agreement, (d) for reimbursement of expenses under the Company's expense reimbursement policies, or (e) which cannot be released by private agreement, including your right to file a charge of discrimination with an administrative agency (such as with the Equal Employment Opportunity Commission). You are waiving, however, any right to recover money in connection with such a charge or investigation except as permitted under the Dodd-Frank Act. You are also waiving any right to recover money in connection with a charge filed by any other individual,



by the EEOC, or by any other city, local, state or federal agency except as permitted under the Dodd-Frank Act.

21. **SECTION 409A.** It is intended that any amounts payable under this Agreement will be exempt from or comply with Section 409A of the Internal Revenue Code of 1986 (the "Code"), as amended, and the treasury regulations relating thereto, and this Agreement shall be interpreted accordingly. Provided, however, that Tesla and the other Releasees shall not be responsible for any taxes, penalties, interest or other losses or expenses incurred by you due to any failure to comply with Section 409A of the Code. The timing of the payments or benefits provided herein may be modified to so comply with Section 409A of the Code.

22. **MISCELLANEOUS.** This Agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with regard to this subject matter. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations, prior agreements and communications, whether oral or written, as to the specific subjects of this letter by and between you and the Company. This Agreement may not be modified or amended except in writing signed by both you and a duly authorized officer of the Company. However, nothing in this Agreement shall supersede the surviving portions of any confidentiality obligations or agreements into which you have entered with the Company such as the Applicant Non-Disclosure Agreement or the Employee Proprietary Information and Inventions Agreement. Similarly, nothing in this Agreement shall supersede the arbitration provisions in your Offer Letter you signed when you began with the Company. This Agreement will bind the heirs, personal representatives, successors and assigns of both you and the Company, and inure to the benefit of both you and the Company, their heirs, successors and assigns. If any provision of this Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Agreement and the provision in question will be modified by the court so as to be rendered enforceable. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right, nor shall any waiver by the Company of any breach of this Agreement be a waiver of any preceding or succeeding breach. This Agreement will be deemed to have been entered into and will be construed and enforced in accordance with the laws of the State in which you last worked as applied to contracts made and to be performed entirely within the State in which you last worked.

23. **ARBITRATION.** THE PARTIES AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF THE TERMS OF THIS AGREEMENT, THEIR INTERPRETATION, AND ANY OF THE MATTERS HEREIN RELEASED, SHALL BE SUBJECT TO INDIVIDUAL ARBITRATION (NOT CLASS OR COLLECTIVE) BEFORE JUDICIAL ARBITRATION & MEDIATION SERVICES ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES ("JAMS RULES"). THE ARBITRATOR MAY GRANT INJUNCTIONS AND OTHER RELIEF IN SUCH DISPUTES. THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH LAW OF THE STATE IN WHICH YOU LAST WORKED FOR THE COMPANY AND THE ARBITRATOR SHALL APPLY THAT SUBSTANTIVE AND PROCEDURAL STATE LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO ANY CONFLICT-OF-LAW PROVISIONS OF ANY JURISDICTION. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH LAW OF THE STATE IN WHICH YOU LAST WORKED, THE LAW OF THE STATE IN WHICH YOU LAST WORKED SHALL TAKE PRECEDENCE. THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE, AND BINDING ON THE PARTIES TO THE ARBITRATION. THE PARTIES AGREE THAT THE PREVAILING PARTY IN ANY ARBITRATION SHALL BE ENTITLED TO INJUNCTIVE RELIEF IN ANY COURT OF COMPETENT JURISDICTION TO ENFORCE THE ARBITRATION AWARD. THE PARTIES TO THE ARBITRATION SHALL EACH PAY AN EQUAL SHARE OF THE COSTS AND



Tesla, Inc.
901 Page Avenue, Fremont, CA 94538

EXPENSES OF SUCH ARBITRATION, AND EACH PARTY SHALL SEPARATELY PAY FOR ITS RESPECTIVE COUNSEL FEES AND EXPENSES; PROVIDED, HOWEVER, THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE CONCERNING THIS AGREEMENT RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY. NOTWITHSTANDING THE FOREGOING, THIS SECTION WILL NOT PREVENT EITHER PARTY FROM SEEKING INJUNCTIVE RELIEF (OR ANY OTHER PROVISIONAL REMEDY) FROM ANY COURT HAVING JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER OF THEIR DISPUTE RELATING TO THIS AGREEMENT AND THE AGREEMENTS INCORPORATED HEREIN BY REFERENCE.

24. **KNOWING AND VOLUNTARY EXECUTION OF AGREEMENT.** You understand and agree that you executed this Agreement voluntarily, without any duress or undue influence on the part or behalf of the Company or any third party, with the full intent of releasing all claims under this Agreement against the Company and Releasees. You further acknowledge that you (a) have read this Agreement, (b) have been advised of your right to consult with legal counsel before signing this Agreement and have done so or elected not to retain legal counsel, (c) understand the terms and consequences of this Agreement and of the releases it contains; and (d) are fully aware of the legal and binding effect of this Agreement.

25. **SEVERABILITY.** In the event that any provision or any portion of any provision hereof or any surviving agreement made a part hereof becomes or is declared by a court of competent jurisdiction or arbitrator to be illegal, unenforceable, or void, this Agreement shall continue in full force and effect without said provision or portion of provision.

26. **REVIEW AND EFFECTIVE DATE.**

(a). You have seven (7) calendar days after your receipt of this Agreement to consult an attorney regarding the Agreement. If you choose to sign the Agreement prior to the end of the seven (7) calendar days, you acknowledge that you did so knowingly and voluntarily, and were not inducted by Tesla's fraud, misrepresentation, or threat to withdraw or alter the offer. The Parties agree this Agreement shall be null and void if not executed by you within seven (7) calendar days after your receipt of this Agreement (the "Expiration Date").

(b). This Agreement will become effective on the day you have signed and returned it, as set forth below (the "**Effective Date**").

Upon acceptance of this Agreement, within the timeframe specified above, please electronically sign below. Upon your electronic signature and submission below, this will become our binding agreement with respect to your separation from Tesla and its terms merging and superseding in their entirety all other or prior agreements and communications, whether written or oral, by you and the Company as to the specific subjects of this Agreement.

**I UNDERSTAND AND AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND INTEND, BY MY SIGNATURE BELOW, TO BE LEGALLY BOUND BY THOSE TERMS. I AM SIGNING THIS RELEASE KNOWINGLY, WILLINGLY AND VOLUNTARILY IN EXCHANGE FOR THE SEVERANCE BENEFITS DESCRIBED ABOVE:**

JOHN LYNCH



Signature: _____   Date: _____

T ≡ 5 L ⊼
Tesla, Inc.
901 Page Avenue, Fremont, CA 94538

# Your Separation Agreement

Interim Agreement Report                                                  2022-08-02

| | |
|---|---|
| Created: | 2022-06-11 |
| By: | GigaNV HR (giganvhr@tesla.com) |
| Status: | Out for Signature |
| Transaction ID: | CBJCHBCAABAAvSV0gCzUwVxbDF_XKc0g-5ykvUmhYP_f |

Agreement History

Agreement history is the list of the events that have impacted the status of the agreement prior to the final signature. A final audit report will be generated when the agreement is complete.

## "Your Separation Agreement" History

Document created by GigaNV HR (giganvhr@tesla.com)
2022-06-11 - 8:48:09 PM GMT

Document emailed to johnlynch61@yahoo.com for signature
2022-06-11 - 8:49:01 PM GMT

Email viewed by johnlynch61@yahoo.com
2022-06-27 - 6:35:28 PM GMT- IP address: 98.138.219.13

Email viewed by johnlynch61@yahoo.com
2022-06-28 - 3:54:02 AM GMT- IP address: 98.138.18.118

Email viewed by johnlynch61@yahoo.com
2022-07-01 - 9:49:29 PM GMT- IP address: 69.147.86.73

Email viewed by johnlynch61@yahoo.com
2022-07-03 - 5:53:41 PM GMT- IP address: 98.138.18.117