## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| **JOHN LYNCH, DAXTON HARTSFIELD, and SHAWN SAKHIZADA individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**TESLA, INC.**<br><br>*Defendant.* | No. 1:22-cv-00597 |

## PLAINTIFFS' OPPOSITION TO TESLA'S RENEWED MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITRATION UNDER RULES 12(B)(1) AND 12(B)(3)

## I.      INTRODUCTION

This case is brought on behalf of individuals who have worked for Defendant Tesla, Inc. ("Tesla") and have been terminated by Tesla in an ongoing mass layoff. Plaintiffs allege that Tesla has violated the violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), as well as California's state law analog, the California WARN Act, Cal. Lab. Code § 1400 *et seq.* In its Renewed Motion to Dismiss and Compel Arbitration (Dkt. 28), Tesla asks this Court to ignore Plaintiffs' Emergency Motion for a Protective Order (Dkt. 7) that was filed on July 5, 2022, and instead dismiss Plaintiffs' claims and compel them to arbitration. Plaintiffs reiterate that the Court should decide Plaintiffs' Emergency Motion **before** addressing Tesla's attempt to compel arbitration. Doing so will maintain the status quo in this case and protect potential class members' ability to advance their claims. Courts in the Fifth Circuit have routinely held that courts are empowered to issue preliminary relief to maintain the status quo even where a defendant seeks to compel arbitration. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Such preliminary relief is even expressly contemplated by Tesla's arbitration agreement.  *See* Tesla's Arbitration Agreement (Dkt. 28-1 at p. 20) ("Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court…").

Tesla has attempted to short-circuit the WARN Act claims that have been filed in this case by seeking to collect releases of that claim – from employees who have no reason to know that they have the right to 60 days' pay (rather than one week's pay) and who have not been informed that a class action case has been filed on their behalf seeking to recover this pay for them - while it is being litigated. As numerous courts have held, unsupervised and deceptive

communications with putative class members are prohibited. *See, e.g.*, *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-0517-D, 2018 WL 4539114, at *5 (N.D. Tex. Sept. 21, 2018); *Spence v. Irving Holdings, Inc.*, 2010 WL 5609023, at *1 (N.D. Tex. Dec. 15, 2010); *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *5–6 (N.D. Cal. July 8, 2010). Regardless of whether Plaintiffs' claims are ultimately compelled to arbitration, this Court can and should enter a protective order now barring Tesla from inducing people to sign away their rights for *de minimis* value without them even knowing about the existence of this lawsuit.

Moreover, Tesla's effort to compel arbitration is without merit. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, an arbitration agreement is enforceable unless there are grounds for revocation under applicable state law. *See Rodriguez v. Xerox Business Services, LLC*, 2017 WL 1278714, at *4 (W.D. Tex. Feb. 9, 2017). Tesla has argued, and Plaintiffs agree, that the arbitration agreements are governed here by the contract law of California. The agreements are both procedurally and substantively unconscionable under California law.

First, the agreements are procedurally unconscionable because they are contracts of adhesion that do not include opt-out provisions or otherwise permit the Plaintiffs to negotiate their terms. Such agreements are particularly unconscionable in the employment context, where employees face a high degree of economic pressure to accept the agreement. *See Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 243 (2016). Additionally, while the agreements incorporate the JAMS employment rules, the agreements do not include copies of these rules or direct Plaintiffs where they can be found. *See id.*

Second, the agreements are substantively unconscionable. They provide for confidentiality, which courts in California and elsewhere have routinely found to unfairly benefit

employers. *See Ramos v. Superior Court*, 28 Cal. App. 5th 1042 (2018); *Balan v. Tesla Motors, Inc.*, 2019 WL 2635903, at *3 (W.D. Wash. June 27, 2019) (holding Tesla's arbitration agreement substantively unconscionable to the extent it required confidentiality). Additionally, the agreements are substantively unconscionable in that they are non-mutual with respect to the arbitrator's ability to consolidate claims or fashion classwide relief. *See Roe v. SFBSC Mgmt., LLC*, 2015 WL 930683, at *6 (N.D. Cal. Mar. 2, 2015). Given that the agreements are procedurally and substantively unconscionable, Tesla's Motion to Dismiss and Compel Arbitration should be denied.

## II.     BACKGROUND

### A.     The Pending Motions

Plaintiffs filed this class action lawsuit on June 19, 2022. Plaintiffs allege that in approximately May or June 2022, Tesla initiated mass layoffs from its facilities across the country and that Tesla violated the WARN Act[1] by failing to provide any advance written notice to its employees prior to laying them off. Rather than providing its employees with the required sixty (60) days advance notice before laying them off, Tesla has instead been systematically terminating its employees effective immediately. (Jointer Decl. ¶ 4, Dkt. 7-1; Lynch Decl. ¶ 4, Dkt. 7-2; Nelson Decl. ¶ 4, Dkt. 7-3; Sibley Decl. ¶ 4, Dkt. 7-4; Strickland Decl. ¶ 4, Dkt. 7-5; Walker Decl. ¶ 4, Dkt. 7-6; Ward Decl. ¶ 4, Dkt. 7-7.)

Additionally, Tesla has been encouraging the employees who are being laid off to sign severance agreements in exchange for a modest severance payment generally consisting of one or two weeks' salary. (Jointer Decl. ¶ 5, Dkt. 7-1; Lynch Decl. ¶ 7, Dkt. 7-2; Nelson Decl. ¶ 5, Dkt.

---

[1]     Plaintiffs' First Amended Complaint (Dkt. 26) now also alleges that Tesla violated the California WARN Act, Cal. Lab. Code § 1400 *et seq.*

7-3; Sibley Decl. ¶ 5, Dkt. 7-4; Strickland Decl. ¶ 5, Dkt. 7-5; Walker Decl. ¶ 5, Dkt. 7-6; Ward Decl. ¶ 5, Dkt. 7-6.)

These severance agreements include a general release of claims that purport to fully release "any and all claims arising under any federal, state or local law or statute, including but not limited to . . . the Worker Adjustment and Retraining Notification Act . . . ." (Ex. A to Jointer Decl., Dkt. 7-1; Ex. A to Lynch Decl., Dkt. 7-2; Ex. A to Nelson Decl., Dkt. 7-3; Ex. A to Sibley Decl., Dkt. 7-4; Ex. A to Strickland Decl., Dkt. 7-5; Ex. A to Walker Decl., Dkt. 7-6; Ex. A to Ward Decl., Dkt. 7-7.)

Although this lawsuit was filed on June 19, 2022, Tesla has continued to lay employees off without providing the required WARN Act notice, and it has continued to urge the employees who have been laid off to sign separation agreements for just one or two weeks' pay. (Lynch Decl. Ward Decl. ¶ 4, Dkt. 7-7.)

On July 5, 2022, Plaintiffs filed an Emergency Motion for a Protective Order pursuant to Fed. R. Civ. P. 23(d) requesting that the Court enter a protective order that would prevent Tesla from obtaining releases from the individuals who it is laying off and would invalidate the releases that Tesla has obtained since the filing of this lawsuit.

Tesla responded by first filing their initial Motion to Dismiss and Compel Individual Arbitration on July 14, 2022 (Dkt. 13), and then submitting an opposition to Plaintiffs' Emergency Motion for a Protective Order on July 19, 2022 (Dkt. 20), in which it primarily argued that Plaintiffs' motion should be denied since the Court should compel Plaintiffs' claims to arbitration.

On July 26, 2022, Plaintiffs filed their First Amended Complaint as of right in order to

add named Plaintiff Shawn Sakhizada, who asserts that Tesla violated the California WARN Act in addition to the federal WARN Act. The Court entered an order mooting Tesla's initial Motion to Dismiss and Compel Arbitration in light of the First Amended Complaint.  On August 2, 2022, Tesla filed its Renewed Motion to Dismiss and Compel Arbitration (Dkt. 28).[2]

### B.    Tesla's Arbitration Agreement

With respect to Plaintiffs Lynch and Hartsfield, Tesla relies on the following arbitration agreement in its effort to dismiss the case:

> In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by ***final, binding and confidential arbitration*** in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:
>
> > a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and
> >
> > b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and
> >
> > c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or

---

[2]    In Tesla's Motion to Dismiss and Compel Arbitration, Tesla accuses Plaintiffs' counsel of gamesmanship with respect to Tesla's response deadline for a responsive pleading to Plaintiffs' First Amended Complaint. Tesla, however, misunderstands the circumstances regarding the filing of the First Amended Complaint. In late 2021, Plaintiffs' counsel was informed by the clerk's office for the Western District of Texas that amended complaints had to be filed by paper and Plaintiffs' counsel had done so without issue in other cases. As such, Plaintiffs' counsel shipped the First Amended Complaint to the Court by overnight mail on July 20, 2022, and served a copy on Defendant via first class mail the same day. However, by July 25, 2022, the First Amended Complaint did not appear on the docket for this case. As such, Plaintiffs filed it via the Court's CM/ECF system on July 25, 2022 (Dkt. 26). Tesla's time to submit a responsive pleading was in no way shortened, and furthermore, had Tesla requested an extension, Plaintiffs would have agreed. Tesla's *ad hominem* attack against Plaintiffs' counsel is uncalled for.

collective action or to award relief to a group or class of employees in one arbitration proceeding; and

d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

(Lynch Arb. Agreement, Dkt. 28-1 at p. 11; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 20.)

With respect to Plaintiff Sakhizada, Tesla asserts that he signed an arbitration agreement that states the following:

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/ Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action between the parties must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

6

b. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law; and

c. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

d. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

e. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

f. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

g. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims. If one or more of the provisions in this arbitration agreement, or any portion thereof, are deemed invalid, unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

(Sakhizada Arb. Agreement, Dkt. 28-1 at pp. 28-29.)

## III.   ARGUMENT

### A.   The Court Should Defer Deciding this Motion Until it Has Decided Plaintiffs' Emergency Motion for a Protective Order

The Court should not address Tesla's Motion to Dismiss and Compel Arbitration until it has first decided Plaintiffs' Emergency Motion for a Protective Order. As is set out more fully in Plaintiffs' Emergency Motion (Dkt. 7) and Plaintiffs' Reply in support of that motion (Dkt. 27), Tesla has attempted to short-circuit the WARN Act claims that have been filed in this case by seeking to collect releases of that claim while it is litigated from employees who have no reason to know that they have the right to 60 days' pay and who have not been informed that a class action case has been filed on their behalf. Plaintiffs have thus asked the case to preliminarily intervene to prevent this abusive conduct.[3] Plaintiffs here simply seek a protective order maintaining the status quo, so that Tesla cannot unduly undermine the putative class members' ability to pursue their claims. Even if Tesla were to ultimately succeed on a future motion to dismiss and compel arbitration and its former employees were compelled to arbitrate their WARN Act claims, issuing a protective order now would prevent Tesla from obtaining releases (or enforcing the releases it has obtained since this lawsuit was filed) that could prevent these individuals from actually arbitrating their claims.

---

[3] In its Motion to Dismiss and Compel Arbitration, Tesla attempts to distract the Court by accusing Plaintiff Lynch of making a misrepresentation in his sworn declaration. Plaintiff Lynch did no such thing. In his declaration, Plaintiff Lynch attested that he did not receive an email soliciting him to sign a separation agreement that contained a full release until June 26, 2022, after this lawsuit was filed. *See* Lynch Decl. ¶ 7, Dkt. 7-2. Tesla alleges that this testimony was false because its records supposedly reflect that the separation agreement was emailed to him on June 11, 2022. *See* Flesch Decl., Ex. A-4, Dkt. 28-1 at p. 47. However, this document comports with Lynch's testimony. Regardless of whether Tesla's records reflect that the document was sent on June 11, it was not *received* by Lynch until at least June 26, 2022. *See* Lynch Decl. ¶ 7, Dkt. 7-2. Indeed, the first record of Lynch actually reviewing the document was on June 27, 2022. *See* Flesch Decl., Ex. A-4, Dkt. 28-1 at p. 47. It is deeply inappropriate for Tesla to make such an allegation.

To briefly reiterate the arguments set forth in Plaintiffs' Emergency Motion (Dkt. 7) and
Reply (Dkt. 27), courts have routinely granted the type of relief that Plaintiffs seek. Pursuant to
Rule 23(d), courts can regulate communications with class members from the outset of a case to
protect class members from deceptive and misleading tactics. *See Gulf Oil Co. v. Bernard*, 452
U.S. 89, 101-02 (1981) (recognizing that a court may, in appropriate circumstances, restrict
communications between a party and members of a class or a putative class*); DW Volbleu, LLC v.
Honda Aircraft Co., Inc.*, 2021 WL 5826536, at *2 (E.D. Tex. Dec. 8, 2021) (acknowledge that
courts are empowered under Rule 23(d) to take curative measures "restricting or modifying the
manner in which communications are conducted between one more of the litigants already before
the court and the 'potential' class members.").

In analogous contexts, courts in the Fifth Circuit and across the country have stepped in
to prevent defendants from inducing employees from opting out of lawsuits or otherwise
sacrificing their ability to pursue their claims. *See, e.g.*, *Williams*, 2018 WL 4539114, at *5
(ordering corrective notice to members of a putative collective action who signed waivers in
response to Defendant's *ex parte* communication and permitting such individuals to challenge the
agreements as voidable); *Espinoza*, 2015 WL 9592535, at *3 (refusing to enforce arbitration
agreements distributed during the pendency of a collective action lawsuit); *Spence*, 2010 WL
5609023, at *1 (courts have balanced parties' First Amendment rights with a court's role in
regulating communication with potential class members "both before and after a class [is]
conditionally certified under the FLSA" and have often prohibited misleading communications);
*Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015)
("A curative notice shall also be sent to all recipients of the Defendants' communications,

notifying them that the settlement agreements are invalid."); *Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 699 (W.D. Tex. 2015) (sanctioning Defendant's ex parte communication with class members designed to discourage participation in a collective action lawsuit and "allow[ing] Plaintiffs to send the corrective notice...to all [] class members by U.S. mail.  The corrective notice [was required to] be posted by Defendants at their places of business in a location visible to employees. Defendants [were also required to] bear the cost of sending the corrective notice, and [to] further pay Plaintiffs' reasonable attorneys' fees incurred in bringing th[e] Motion."). *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (refusing to enforce arbitration agreements that would prevent putative class members from participating in case).

Moreover, the Court is empowered to grant such relief before addressing Tesla's Motion to Dismiss and Compel Arbitration and indeed regardless of whether Tesla succeeds in its effort to compel arbitration. As the Fifth Circuit has noted, "the language of the FAA does not touch on the ancillary power of the federal court to act before it decides whether the dispute is arbitrable." *Janvey*, 647 F.3d at 595. In other words, the Fifth Circuit has held that courts have the authority to relief to preserve the status quo even if a case is ultimately compelled to arbitration. *See id*. In *Janvey*, the Fifth Circuit upheld a preliminary injunction where "the district court merely sought to preserve the status quo *before* deciding the motion to compel arbitration, and by doing so they sought to preserve the meaningfulness of any arbitration that might take place." *Id.* (emphasis in original). [4]

---

[4]     Tesla argues that Plaintiffs improperly pivoted in their Reply in support of their Emergency Motion from seeking relief under Rule 23(d) to seeking a legally distinct injunction to preserve the status quo. That is not true – Plaintiffs seek a protective order under Rule 23(d), which would have the impact of preserving the status quo. The reason that Tesla raises this point

Tesla's arbitration agreements themselves provide for the opportunity to obtain this kind of relief. The version of the agreement that Plaintiffs Lynch and Hartsfield signed state: "Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration." *See* Lynch Arb. Agreement, Dkt. 28-1 at p. 11; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 20. Likewise, the version of the agreement that Plaintiff Sakhizada signed states that "Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted." Sakhizada Arb. agreement, Dkt. 28-1 at p. 29; *see also Direct Biologics, LLC v. McQueen,* 2022 WL 1693995, at *5 (W.D. Tex. May 26, 2022) (where an arbitration permits parties "to seek preliminary relief in court," a motion to compel arbitration does not divest the court to jurisdiction to grant preliminary relief). If the Court were to find that the arbitration agreement is enforceable but that it did not have the authority to address Plaintiffs' request for preliminary relief in advance, it would run afoul of *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713 (2022), which held that even if an arbitration agreement is ultimately enforceable, "a court may not devise novel rules to favor arbitration over litigation," as the "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." In other

---

is that in its Sur-Reply in opposition to Plaintiffs' Emergency Motion (Dkt. 29-1 at 3), it argues that *Janvey* and the other cases Plaintiffs cite apply in the context of injunctive relief. Tesla, however, fails to explain why *Janvey* would not apply equally in the Rule 23(d) context. The only difference between injunctive relief and a protective order under Rule 23(d) is that in the context of an injunction, the Court relies on its equitable authority whereas under Rule 23(d), it relies on its authority derived from the Federal Rules of Civil Procedure. There is no reason why the Court should be able to grant equitable relief prior to addressing a motion to compel arbitration but not relief under Rule 23(d).

words, the Court can't simply hold that the arbitration agreement is enforceable while ignoring its provision permitting the parties to seek preliminary remedies from the court just because Tesla moved to compel. Case law, and the arbitration agreement itself, thus make clear that the Court is empowered to act on Plaintiffs' Emergency Motion *before* deciding whether the case must be compelled to arbitration.

      **B.**      **Tesla's Motion to Dismiss and Compel Individual Arbitration Should be Denied**

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). Thus, an agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state. *See Rodriguez*, 2017 WL 1278714, at *4. As Tesla concedes, the pre-employment arbitration agreements contained in the offer letters of Plaintiffs Lynch and Hartsfield are governed by a California choice-of-law provision. (Lynch Arb. Agreement, Dkt. 28-1 at p. 21; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 12.) Likewise, Plaintiff Sakhizada's arbitration agreement is governed by California law by virtue of the fact that he worked in California, as the choice-of-law provision in his offer letter provides that it is governed by the law of the state in which he worked. (Sakhizada Arb. agreement, Dkt. 28-1 at p. 29.)

Unconscionability under California law "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 88 (2000) (internal quotation marks omitted). Courts use a "sliding scale" in analyzing these two elements: "[T]he more substantively oppressive the contract term, the less evidence of

procedural unconscionability is required to come to the conclusion that the term is

unenforceable, and vice versa." *Id.*

### 1.    The arbitration agreements are procedurally unconscionable

Here, because the arbitration agreements were included in contracts of adhesion, there is

a high degree of procedural unconscionability. "In assessing procedural unconscionability, the

court focuses on whether the contract was one of adhesion. Was it imposed on employees as a

condition of employment? Was there an opportunity to negotiate?" *Davis v. O'Melveny & Myers*,

485 F.3d 1066, 1073 (9th Cir. 2007). "It is well settled that adhesion contracts in the employment

context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically

contain some aspects of procedural unconscionability." *Carbajal*, 245 Cal. App. 4th at 243

(quoting *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013))

(additional citation omitted). Furthermore, "[a]s the [California] Supreme Court repeatedly has

explained, 'in the case of preemployment arbitration contracts, the economic pressure exerted by

employers on all but the most sought-after employees may be particularly acute, for the

arbitration agreement stands between the employee and necessary employment, and few

employees are in a position to refuse a job because of an arbitration requirement." *Id.* (quoting

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 115 (2000)) (additional

citations omitted). Courts also find procedural unconscionability where employees are not given

a meaningful opportunity to opt out of the agreement. *See Circuit City Stores, Inc. v. Mantor*, 335

F.3d 1101, 1107 (9th Cir. 2003) (where the plaintiff "has no meaningful choice, nor any legitimate

opportunity, to negotiate or reject the terms of the arbitration agreement," the agreement was

procedurally unconscionable.").

Here, the Plaintiffs did not have a meaningful opportunity to opt out of the arbitration provision. As Tesla's Senior Analyst, Recruiting Benjamin Flesch attested in his declaration in support of Tesla's Motion to Compel Arbitration, "[f]or at least the past fifteen years, Tesla has **required** all of its employees to sign arbitration agreements at the outset for their employment, including Lynch, Hartsfield, and Sakhizada" (Flesch Decl. ¶ 3, Dkt. 28-1) (emphasis added). In order to accept their job offers, Plaintiffs Lynch and Hartsfield were required to use an application management system called Taleo to electronically sign the letter indicating their agreement to the arbitration clause. (Flesch Decl. ¶ 6, Dkt. 28-1.) The only option presented to the Plaintiffs was "a button entitled 'Accept and eSign Offer.'" (Flesch Decl. ¶ 6, Dkt. 28-1.) Likewise, Flesch attested that Plaintiff Sakhizada was presented with the offer letter (albeit on a more recent applicant management system called Avature) and had only "the ability to accept or decline the offer letter" as a whole by electronically signing. (Flesch Decl. ¶ 13, Dkt. 28-1.) The arbitration agreements do not contain opt-out provisions, and if Plaintiffs wanted their jobs, they had no choice but to agree to arbitration on Tesla's terms. Tesla wielded exactly the kind of economic pressure over Plaintiffs that the California Supreme Court bemoaned in *Armendariz*, 24 Cal. 4th at 115.

Furthermore, courts have held that where an arbitration agreement incorporates the rules of an arbitration forum, but does not provide a copy of those rules or inform the employee where to find a copy of those rules, the degree of procedural unconscionability is increased. *See Carbajal*, 245 Cal. App. 4th at 244. Here, the arbitration agreement state that the arbitrations would proceed "under the then current rules of JAMS for employment disputes." (Lynch Arb. Agreement, Dkt. 28-1 at p. 11; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 20; Sakhizada Arb.

Agreement, Dkt. 28-1 at p. 28.) However, these agreements do not include copies of the JAMS employment rules, nor do they direct the employees to where they may find these rules. This omission further supports a finding that Tesla's arbitration agreements are procedurally unconscionable. *See Carbajal*, 245 Cal. App. 4th at 244 (collecting cases).

### 2.    The arbitration agreements are substantively unconscionable

Substantive unconscionability focuses on the harshness and one-sidedness of a contract's substantive terms. *Roe v. SFBSC Mgmt., LLC*, 2015 WL 930683, at *6 (N.D. Cal. Mar. 2, 2015) (*citing Correa v. Firestone Complete Auto Care*, 2013 WL 6173651, at *3 (N.D. Cal. Nov. 25, 2013) (*citing A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982)).

First, the agreements include that the arbitrations will be "confidential." (Lynch Arb. Agreement, Dkt. 28-1 at p. 11; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 20; Sakhizada Arb. Agreement, Dkt. 28-1 at p. 28.)[5] Courts in California and elsewhere around the country have held that confidentiality in arbitration agreements in the employment context are substantively unconscionable, because such clauses provide employers unfair advantages. *See, e.g.*, *Ramos v. Superior Court*, 28 Cal. App. 5th 1042 (2018) (holding in an employment discrimination case that confidentiality "unreasonably favors the employer to the detriment of employees seeking to vindicate unwaivable statutory rights . . ."); *McKee v. AT & T Corp.*, 164 Wash. 2d 372, 398, 191 P.3d 845, 858 (2008), abrogated on other grounds by *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (explaining that "[c]onfidentiality unreasonably favors repeat players such as AT & T" and "secrecy conceals any patterns of illegal or abusive practices" and "hampers plaintiffs in learning about potentially meritorious claims and serves no purpose other than to tilt the scales

---

[5]      While the Sakhizada arbitration agreement uses the word "private" rather than confidential, the JAMS Employment Rule 26 provides for blanket confidentiality. *See* https://www.jamsadr.com/rules-employment-arbitration/english.

in favor of AT & T" while "[m]eanwhile, consumers are prevented from sharing discovery, fact

patterns, or even work product, such as briefing, forcing them to reinvent the wheel in each and

every claim, no matter how similar") (internal citations and quotation marks omitted).[6]

Indeed, in another recent case a court evaluated Tesla's arbitration agreement and noted

that "[i]n this case, the Agreement requires 'all disputes, claims or causes of action' to be

resolved 'by final, binding, and <u>confidential arbitration</u>.'" *Balan v. Tesla Motors, Inc.*, 2019 WL

2635903, at *3 (W.D. Wash. June 27, 2019) (emphasis in original) (rev'd on other grounds in

*Balan v. Tesla, Inc.*, 840 Fed. Appx. 303, 304-05 (9th Cir. 2021)). The court concluded that this

provision was substantively unconscionable, and that "[a]lthough facially neutral, confidentiality

provisions usually favor companies over individuals . . . ," and that "[t]his broad confidentiality

---

[6]        *See also, e.g., Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 578 (Ky. 2012)
(observing that while "it is well-established that confidentially agreements may be enforceable to
protect, for example, personal information or trade secrets; in situations like here, where such
concerns are not present, the provision is wholly one-sided, protecting only the company that
prepared the contract with no reciprocal benefit to the consumers"); *Sprague v. Houseld Intern.*,
473 F. Supp. 2d 966, 975 (W.D. Mo. 2005) (finding confidentiality provision in an arbitration
agreement unconscionable, because "[a]lthough it appears that [defendant] has had related
disputes with consumers in the past, the Plaintiffs will not have access to the details of those
proceedings – for example, to see how fees and waiver requests have been handled or to
determine whether an agreement to arbitrate is even wise, given the track record of [defendant's]
success during arbitration"); *Luna v. Household Finance Corp. III*, 236 F. Supp. 2d 1166, 1180
(W.D. Wash. 2002) ("a lack of public disclosure may systematically favor companies over
individuals" and "the unavailability of arbitral decisions also may prevent potential plaintiffs
from locating the information necessary to build a case of intentional misconduct or to establish a
pattern or practice of discrimination by particular companies") (internal quotations omitted). *See
also Hoober v. Movement Mortgage, LLC*, 382 F. Supp. 3d 1148, 1160-61 (W.D. Wash. 2019)
(following *McKee* and holding the confidentiality provision to be substantively unconscionable);
*Narayan v. The Ritz-Carlton Development Co., Inc.*, 140 Hawai'i 343, 355 (2017) (finding that a
confidentiality provision in an arbitration agreement was unconscionable, because "[i]n addition
to detrimentally affecting the plaintiffs' ability to investigate their claims, the confidentiality
provision insulates the defendants from potential liability"); *Kinkel v. Cingular Wireless LLC*, 223
Ill.2d 1, 42 (Ill. 2006) (finding that confidentiality provision  "burden's an individual's ability to
vindicate statutory claims" explaining, "the strict confidentiality clause that prohibits Cingular,
the claimant, and the arbitrator from disclosing 'the existence, content, or results of any
arbitration,' means that even if an individual claimant recovers on the illegal-penalty claim,
neither that claimant nor her attorney can share that information with other potential claimants,"
and "Cingular, however, can accumulate experience defending these claims").

clause leads to the harsh, one-sided result that Tesla may publicly attack Plaintiff while she may not publicly defend herself." *Id.* (quoting *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003)).

Although the *Balan* court analyzed the agreement under Washington law rather than California law, the outcome here is the same. In *Ramos* the California Court of Appeal examined the Washington case law and explained that the concerns regarding confidentiality are equally salient for the purposes of California law – that it would give the employer an unfair advantage, would inhibit employees' ability to engage in informal discovery that would undergird more formal discovery efforts, and that it would make it more difficult for employees to accrue evidence of companywide malfeasance. *See Ramos*, 28 Cal. App. 5th at 1066-67. *See also Storms v. Paychex, Inc.*, 2022 WL 2160414, at \*15-16 (C.D. Cal. Jan. 14, 2022) (holding that a broad confidentiality provision was substantively unconscionable "particularly in the context of an employer-employee relationship"); *DeGraff v. Perkins Coie LLP*, 2012 WL 3074982, at \*4 (N.D. Cal. July 30, 2012) ("However, with respect to the confidentiality provision, Plaintiff has made a showing that this provision unfairly benefits Perkins Coie. Perkins Coie has institutional knowledge of prior arbitrations. In contrast, individual litigants, such as Plaintiff, are deprived from obtaining information regarding any prior arbitrations. Thus, Perkins Coie is the only party who would obtain any benefit from this provision without receiving any negative impact in return. Accordingly, the Court finds that the confidentiality provision is substantively unconscionable."). That Tesla's arbitration agreement calls for confidentiality puts Tesla at an unfair advantage and renders the agreement substantively unconscionable.

Second, Tesla's arbitration agreements are unenforceable in that they are not completely bi-lateral, containing a "one-way ban" on the ability of the arbitrator consolidate claims or

fashioning relief in a class or collective manner. *See Storms*, 2022 WL 2160414, at *16 ("Mutuality is the 'paramount' consideration when assessing substantive unconscionability.") (internal citation omitted). The agreement states: "The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding." (Lynch Arb. Agreement, Dkt. 28-1 at p. 11; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 20; Sakhizada Arb. Agreement, Dkt. 28-1 at p. 28.) In similar circumstances, the court in *Roe*, held that a one-way class action ban was substantively unconscionable where it stated: "*Performer agrees* that any claim *she may make* against Owner shall be in her individual capacity, and not as a class or representative action; *she agrees* not to consolidate any claim *she may have* against Owner with the claims of others." *Id.* (emphasis in opinion). As the Court held, "[w]ithout reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Id.* (quoting *Armendariz*, 24 Cal. 4th at 118).

### 3. The Court should find the entire provision unenforceable rather than severing the offending terms

"Under California law, multiple unconscionable provisions suggest that the overall intention of the arbitration agreement was to force employees into unfair arbitration, and it is not abuse of discretion to refuse to enforce the agreement." *Lou v. Ma Labs., Inc.*, 2013 WL 2156316, at *6 (N.D. Cal. May 17, 2013); *see also Assaad v. Am. Nat. Ins. Co.*, 2010 WL 5416841, at *10 (N.D. Cal. Dec. 23, 2010) ("To acquiesce in re-writing so offensive a contract would invite employers to impose plainly one-sided contracts and then later negotiate with the courts so as to salvage the most one-sided language judges will tolerate. Instead, employers should be

encouraged to draft fair provisions from the outset"). In *Armendariz*, the California Supreme Court found that the fact that the arbitration provision there contained "more than one" unconscionable term "weigh[ed] against severance," because "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124; *see also Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1149 (2012) ("An arbitration agreement can be considered permeated by unconscionability if it contains more than one unlawful provision."). The "fact that a severance can mechanically and grammatically be accomplished is not dispositive," since "the California Supreme Court in *Armendariz* was also concerned with whether there was something in the arbitration agreement – such as the fact of more than one unlawful provision – which suggested that the party in the superior bargaining position was trying to impose arbitration not as an alternative to litigation but rather as an inferior forum." *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1030 (N.D. Cal. 2009).

Thus, courts have routinely declined to save arbitration provisions including more than one substantively unconscionable term.[7] *See Roe v. SFBSC Mgmt., LLC*, 2015 WL 930683, at *11-12 (N.D. Cal. Mar. 2, 2015) (refusing to sever three substantively unconscionable terms) (internal citation omitted); *Jackson*, 629 F. Supp. 2d at 1029-31 (refusing to sever two

---

[7]     Tesla seeks to ignore the unconscionable terms of its arbitration agreement by pointing to dated caselaw that purport to favor arbitration.  See Dkt. 28 at p. 7.  However, a unanimous opinion of the U.S. Supreme Court recently clarified that arbitration agreements are *not* to be given special contractual status or immunity from specific scrutiny.  *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713 (2022) (("a court must hold a party to its arbitration contract just as the court would to any other kind. *But a court may not devise novel rules to favor arbitration over litigation.*") (emphasis added).  Accordingly, for the reasons explained herein, Tesla's specific arbitration agreement is unconscionable and cannot be saved by general and trite notions that arbitration agreements are free from judicial scrutiny.

substantively unconscionable terms); *see also Zaborowski v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 464 (9th Cir. 2014); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 84-85 (D.C. Cir. 2005). Thus, courts should not permit "employers and other drafters to draft one-sided agreements and then negotiate down to the least-offensive agreement if faced with litigation; rather, employers should draft fair agreements initially." *Lou*, 2013 WL 2156316, at *6.

Here, the agreements that Plaintiffs Lynch and Hartsfield signed do not even contain a severability clause, meaning that the parties have not expressed an intent for the court to sever unconscionable terms. To the contrary, the Lynch and Hartsfield agreements state that "[t]his Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla." (Lynch Arb. Agreement, Dkt. 28-1 at p. 11; Hartsfield Arb. Agreement, Dkt. 28-1 at p. 21.) Where an arbitration agreement lacks a severance agreement, courts are less likely to sever unconscionable provisions under California law. *See Pereyra v. Guaranteed Rate, Inc.*, 2019 WL 2716519, at *10-11 (N.D. Cal. June 28, 2019). Even with respect to Plaintiff Sakhizada's arbitration agreement, which does include a severability provision, severance is nevertheless inappropriate. The arbitration agreements include at least two substantively unconscionable terms, and the Court should strike down the agreements in their entirety.

## IV.     CONCLUSION

For the foregoing reasons, and for the reasons articulated in Plaintiffs' Emergency Motion for a Protective Order (Dkt. 7) and Plaintiffs' Reply in support thereof (Dkt. 27), the Court should defer deciding Tesla's Motion to Dismiss and Compel Arbitration until after it has addressed Plaintiffs' request for a protective order. After the Court has entered a protective order, it should proceed to deny Tesla's Motion to Dismiss and Compel Arbitration.

Dated: August 16, 2022                    Respectfully submitted,


By: */s/ Drew N. Herrmann*
     Drew N. Herrmann
     Texas Bar No. 24086523
     *drew@herrmannlaw.com*
     Pamela G. Herrmann
     Texas Bar No. 24104030
     *pamela@herrmannlaw.com*
     Allison H. Luttrell
     Texas Bar No. 24121294
     *allison@herrmannlaw.com*
     **HERRMANN LAW, PLLC**
     801 Cherry St., Suite 2365
     Fort Worth, TX 76102
     Phone: 817-479-9229
     Fax: 817-840-5102

-AND-

     Harold L. Lichten, pro hac vice
     *hlichten@llrlaw.com*
     Shannon Liss-Riordan, pro hac vice
     *sliss@llrlaw.com*
     Thomas Fowler, pro hac vice
     *tfowler@llrlaw.com*
     Zachary Rubin, pro hac vice
     *zrubin@llrlaw.com*
     Matthew Patton, pro hac vice
     *mpatton@llrlaw.com*
     **LICHTEN & LISS-RIORDAN, P.C.**
     729 Boylston Street, Suite 2000
     Boston, MA 02116
     Tel. 617-994-5800
     Fax: 617-994-5801

     ATTORNEYS FOR PLAINTIFFS
     AND CLASS MEMBERS

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 16, 2022 a true and accurate copy of theforegoing document was filed via this Court's CM/ECF system.

*/s/ Drew N. Herrmann*
Drew N. Herrmann